## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

Kahoot! AS,

                              Plaintiff,

              v.

CPDlive Pty Ltd. d/b/a
Cahoot Learning,

                              Defendant.

Civil Action No. _____

## COMPLAINT

Plaintiff Kahoot! AS ("Kahoot!" or "Plaintiff"), by and through its attorneys, Dentons US LLP, files this Complaint against Defendant CPDlive Pty Ltd. d/b/a Cahoot Learning ("CPDlive" or "Defendant").

### STATEMENT OF THE CASE

1.      This action for declaratory judgment under 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57 arises from CPDlive's baseless allegations of trademark infringement, breach of contract, unjust enrichment, and fraudulent misrepresentations.

2.      Specifically, CPDlive has wrongfully asserted that Kahoot!'s use of its KAHOOT! mark creates a likelihood of confusion and infringes CPDlive's mark, such that Kahoot! allegedly breached a certain Coexistence Agreement, effective January 19, 2018 ("Coexistence Agreement"). CPDlive has also wrongfully asserted that Kahoot! has been unjustly enriched itself based on purported misrepresentations to CPDlive made after the effective date of the Coexistence Agreement.

1

3.     Beyond the differences in appearance and commercial impression, the parties' respective KAHOOT! Mark and CPDLIVE Mark are used in connection with different goods and services, offered to different types of consumers, and marketed and sold through differing channels of trade. Further, after entering into a Coexistence Agreement, Kahoot! and CPDlive peacefully have coexisted for over seven years without any known instances of actual confusion, which indicates that consumer confusion is unlikely, especially based on the well-established Kahoot! brand versus the relatively unknown CPDlive brand.

4.     Kahoot! is therefore entitled to a declaration that it does not infringe CPDlive's trademark, that Kahoot! did not breach the Coexistence Agreement, and that Kahoot! has not unjustly enriched itself to the detriment of CPDlive.

## PARTIES

5.     Plaintiff Kahoot! AS is an aksjeselskap (limited company), organized under the laws of Norway, with its principal place of business at Kronprinsesse Märthas plass 1, 0160 Oslo, Norway.

6.     On information and belief, Defendant CPDlive Pty Ltd. d/b/a Cahoot Learning is a limited company, organized under the laws of Australia, with its principal place of business at Level 4, 480 Collins St., Melbourne, Victoria, Australia 3000.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over the allegations of trademark infringement pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a). This Court has supplemental jurisdiction over the remaining causes of action pursuant to 28 U.S.C. § 1367.

8.     This Court also has subject matter jurisdiction under 28 U.S.C. §§ 2201(a) and 2202. On or about April 28, 2025, counsel for CPDlive sent a letter to counsel for Kahoot! asserting

causes of action against Kahoot! for trademark infringement, breach of contract, and fraudulent misrepresentations. Srinivasan Letter (dated Apr. 28, 2025) (attached as Exhibit A).

9.     This Court has personal jurisdiction over CPDlive because, on information and belief, it conducts and has conducted business in the Commonwealth of Massachusetts and within this judicial district, including advertising and sale of its goods and services online to customers in the Commonwealth of Massachusetts through its website www.cahootlearning.com, and contracts with customers and partners in Massachusetts. As such, it has purposefully availed itself of the privilege of conducting business in Massachusetts.

10.     In particular, CPDlive advertises multiple customer testimonials on its website relating to customers and partnerships in Massachusetts for the MIT Alumni Association (Cambridge, Massachusetts), Harvey Performance Company (Boston, Massachusetts), and MIT Professional Education (Boston, Massachusetts). Cahoot Learning, About Us, Testimonials, https://www.cahootlearning.com/about-us/testimonials.html (attached as Exhibit B) (last visited June 9, 2025).

11.     On information and belief, CPDlive also partnered with the Massachusetts Institute of Technology ("MIT") Professional Education Digital Plus Program, which is headquartered in Massachusetts, to collaborate in providing dual-track professional certificates program including "Leading in the Transformative Era" and "Strategic Leadership & Innovation." PR Newswire, Cahoot Learning Announces New MIT Professional Education Professional Certificate Program *available at* https://www.prnewswire.com/news-releases/cahoot-learning-announces-new-mit-professional-education-professional-certificate-programs-300539686.html#:~:text=Cahoot%20Learning%20International%20(CLI)%20is,%2C%20visit:%20cahootlearning.com. (attached as Exhibit C) (last visited June 9, 2025); MIT Professional

Education Launches Digital Plus Programs: An Innovative Collaborative Learning Offering, *available at* https://professional.mit.edu/news/press-releases/mit-professional-education-launches-digital-plus-programs-innovative (attached as Exhibit D) (last visited June 9, 2025).

12.     On information and belief, MIT continues to offer these professional education programs.

13.     Furthermore, CPDlive broadly offers its products into the United States via its website. While CPDlive is an Australian company, it cites testimonials from customers in Pennsylvania, Colorado, and Washington, DC, in addition to the customers and partners in Massachusetts, identified above. *See* Exhibit B.

14.     CPDlive asserts that Kahoot! infringes CPDlive's U.S. trademark and further alleges that, due to the harm suffered, Kahoot! must conduct a U.S. nationwide corrective advertising campaign to remedy Kahoot!'s alleged transgressions. *See* Exhibit A.

15.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district. Specifically, Kahoot! has sold goods and services in this judicial district, which CPDlive alleges infringe its trademark.

16.     Venue also is proper in this district under 28 U.S.C. § 1391(c)(3) as CPDlive is not a resident of the United States and as such may be sued in this judicial district.

## FACTUAL BACKGROUND

### Plaintiff Kahoot!'s History, Goods and Services, and Mark

17.     Kahoot! is a global learning and engagement platform company founded in 2012 whose mission is to empower everyone, including children, students, and employees, to unlock their full learning potential. The Kahoot! platform makes it easy for any individual or corporation

to create, share, and host learning sessions that drive compelling engagement and boost learning outcomes. Kahoot! sessions can be hosted anywhere, in person or virtually, using any device with an internet connection. Kahoot! markets and sells a game-based learning platform, via a variety of plans and packages, that makes it easy to create, share and play learning games or trivia quizzes in minutes.



18.    Central to the Kahoot! brand is its "K!" logo as demonstrated by Kahoot!'s search engine online marketing for "Kahoot" (reproduced below) as well as the icon for (i) the Kahoot! App, which is available on the Apple iOS, Apple MacOS, and Amazon App Stores, and on Google Play; (ii) its LinkedIn page; (iii) its Facebook page; (iv) its YouTube channel; and (v) its educator certification courses (all reproduced below). The K! logo is inextricably intertwined with the Kahoot! branding.

# Kahoot!

Online game



4.2/5 · App Store - Apple ›     |     4.7/5 · Google Play ›

Kahoot! is a Norwegian online game-based learning platform. It has learning games, also known as "kahoots", which are user-generated multiple-choice quizzes that can be accessed via a web browser or the Kahoot! app. Wikipedia ›



Developer ›

Kahoot!

Platforms ⌄

iOS, Android, Mac operating systems

**Genres:** Trivia, Party video game, Educational video game

**Initial release date:** March 12, 2013

**Available in:** 17 languages

Apple iOS App Store (Apple)

Google Play Store (Android)





Amazon App Store



Apple MacOS App Store



LinkedIn



Facebook



YouTube



Kahoot! Certification for Educators



19.    On February 22, 2016, Kahoot! filed U.S. Trademark App. No. 86/914,940 with the United States Patent and Trademark Office ("USPTO") for the KAHOOT! mark (image below), which received Registration No. 5420892 ("the KAHOOT! Mark"). A copy of the KAHOOT! registration is attached as Exhibit E. Kahoot! is the owner of the KAHOOT! Mark.

# Kahoot!

20.    On February 22, 2016, Kahoot! also filed U.S. Trademark App. No. 86/914,970 with the USPTO for the K! logo (image below), which registered as Registration No. 5174583

("the K! Mark"). A copy of the K! registration is attached as Exhibit F. Kahoot! is the owner of the K! Mark. The "K!" Mark is a core component of the Kahoot! branding.



21.    Kahoot! registered the KAHOOT! Mark and the K! Mark in connection with the following goods and services:

    a.  Class 009: Computer software platforms for on-line games to stimulate collaboration and social learning;

    b.  Class 041: Educational and entertainment services, namely, providing an online games platform consisting of electronic games, computer games, and interactive games featuring social learning and educational entertainment; and

    c.  Class 042: Software as a service (SAAS) services featuring software for accessing and playing on-line electronic games for social learning and educational entertainment; software as a service (SAAS) services, namely, hosting software for use by others for use as a game-based platform to stimulate collaboration and social learning. All Kahoot! goods and services utilize the KAHOOT! Mark in connection with these categories of goods and services, in particular, by offering the "gamification" of presentations, trainings, classroom lessons, and assignments. Kahoot! products are divided primarily into three channels, Kahoot! 360 (a workforce engagement platform), Kahoot!+ (an all-in-one teaching, learning, review, and assessment platform), and Kahoot! (a platform to create games and quizzes for social parties and gatherings).

22.    Kahoot! uses the KAHOOT! Mark and K! Mark in connection with the offering, advertising, promotion, and sale of its goods and services.

23.    Educators use the Kahoot! platform in educational spaces to engage learning and deliver impactful lessons. Below is an exemplary screenshot of Kahoot!



24.      Enterprises use the Kahoot! platform (via "Kahoot! 360"-branded plans) in professional spaces to deliver "interactive quizzes and polls to boost engagement." Kahoot!, Kahoot! at Work, Plans & pricing, Individuals & smaller teams *available at* https://kahoot.com/business/pricing/.



## Businesses playing Kahoot!



25.     Below is an exemplary screenshot of the Kahoot! platform offered under a Kahoot!

360 subscription plan.



26.    In October 2012, Kahoot! adopted the Twitter handle "@GetKahoot" and began marketing and advertising the KAHOOT! Mark and K! Mark that same month. *See* Exhibit G (printout of Tweets).

27.    In November 2012, Kahoot! entered the LAUNCHedu competition to be held at the South by Southwest edu (SXSWedu) conference. LAUNCHedu describes itself as "the premiere destination for promising entrepreneurs to showcase their innovative startup education business products and services." *See* Wayback Machine (attached as Exhibit H), *available at* https://web.archive.org/web/20130112215750/http://sxswedu.com/launch-edu.

28.    On January 7, 2013, LAUNCHedu recognized Kahoot! as one of the SXSWedu finalists of the 2013 LAUNCHedu Higher Education event. *See* Wayback Machine (attached as Exhibit I) *available at* https://web.archive.org/web/20130114060825/http://www.sxswedu.com/launchedu/finalists.

29.     By March 4, 2013, Kahoot! had launched its website at the address <beta.getkahoot.com> prominently displaying the KAHOOT! Mark, at least as early as March 4, 2013.     *See*     Wayback     Machine     *available     at* https://web.archive.org/web/20130304211543/http://beta.getkahoot.com:80/ (attached as Exhibit J). The Kahoot! website was available throughout the United States.

30.     On March 5 – 6, 2013, Kahoot! presented its "platform that enables learners to play with knowledge in a collaborative and social manner" at the SXSWedu competition in Austin, Texas. *Id.* At SXSWedu, conference attendees used, created, and hosted Kahoot! games (called "Kahoots") to demonstrate the learning capabilities of the Kahoot! platform, as demonstrated by Kahoot!'s contemporaneous Tweets, reproduced below. At the time of SXSW, Kahoot! had a growing user base with over 500 established users by the summer of 2013 as a result of the SXSW launch, with over 5000 participating players in Kahoots.



31.     On March 7, 2013, Microsoft founder and tech industry icon, Bill Gates, lauded Kahoot! as an exciting opportunity for schools in his closing keynote speech at the 2013 SXSWedu conference.     Phys.org     Learning     platform     uses     quiz     concept     *available     at* https://phys.org/news/2013-04-platform-quiz-concept.html (last visited June 11, 2025) (attached as Exhibit K).

32. Kahoot! publicly launched in September 2013, and by October 23, 2013, Kahoot! had over 82,000 users who had collectively created 2371 "Kahoots" and played Kahoot! over 10,000 times.

33. Kahoot! has used the KAHOOT! Mark in United States commerce continuously since March 2013 for both educational and business uses. On June 24, 2014, for example, Kahoot! sent a Tweet promoting Kahoot! as an "Easy-to-use, game-based, blended learning and classroom response system. For schools, universities and businesses."



34. From 2012 through the first half of 2017, Kahoot! did not offer separate Kahoot! plans. Users were tracked based on how they registered. For example, in 2012-2013, approximately 563 "business" users registered for Kahoot!, including IKEA, which utilized Kahoot! for internal employee training in approximately February 2013 to enable IKEA and IKEA employees to collaborate in a shared virtual space. *See* Exhibit K.

35.     In November 2017, prior to entering the Coexistence Agreement, Kahoot! soft launched the Kahoot! Plus subscription plan to explicitly market to businesses to "Gamify your internal training sessions, presentations and team building activities to make them fun and engaging!"           Kahoot!,           Kahoot!           Plus           *available*           *at* https://web.archive.org/web/20180925171508/https://kahoot.com/businesses/plus/ (dated Sep. 25, 2018);     Kahoot!     Investor     Update     (June     6,     2018)     *available*     *at* https://kahoot.com/files/2018/06/Kahoot_InvestorUpdate_June2018_as_presented.pdf   (attached as Exhibit L). With the Kahoot! for business subscription plan, companies could utilize the Kahoot! platform for training and development, interactive presentations, compliance training, events, or entertainment.                     Kahoot!                     for                     business, https://web.archive.org/web/20191118232545/https://kahoot.com/business/ (dated Nov. 18, 2019) (attached as Exhibit M). The full launch of Kahoot!'s Kahoot! Plus subscription plan occurred in Q1 2018. Exhibit L, Kahoot! Investor Update at 4. Kahoot! marketed its Kahoot! Plus subscription plan as "powering up" internal in-class training, mobile training, presentations and meetings, onboarding new employees, and team building. Exhibit. M, Kahoot! Plus.

36.     Kahoot! continued to develop these Kahoot! commercial subscriptions, such as announcing the "Kahoot! for business Enterprise" game creator subscription. Kahoot! reimagines its game creator making it an indispensable corporate learning and presentation platform *available at*  http://kahoot.com/press/2019/08/13/kahoot-reimagines-game-creator/  (last visited June 13, 2025) (attached as Exhibit N). For example, by October 2018, Kahoot! had nearly $2,000,000 in revenue from business users.

37.     These Kahoot! Plus and Kahoot! for business subscriptions evolved into the Kahoot! 360 offering.

38.     In May 2021, Kahoot! released Kahoot! 360 Spirit "to help enterprises connect with every employee, strengthen company culture, and improve corporate learning outcomes in a hybrid workplace." Kahoot!, Introducing Kahoot! 360 Spirit: A new employee-powered engagement solution for enterprises *available at* https://kahoot.com/blog/2021/05/19/introducing-kahoot-360-spirit-employee-engagement-platform-enterprise/ (last visited June 13, 2025) (attached as Exhibit O). With the release of Kahoot! 360 Spirit, Kahoot! announced that "Kahoot! is a fantastic tool for connecting people during in-person and virtual meetings, training sessions, and events. Kahoot! 360 Spirit builds upon the core Kahoot! experience to provide enterprises with a solution that connects an entire organization throughout the workday." *Id.*

39.     Kahoot!'s commercial customers include both major corporations and small business that use its enterprise solution, Kahoot! 360, to build or develop their own training, presentations, and events. Large corporations and small businesses utilize the Kahoot! platform to engage with their employees and customers by hosting interactive quizzes, polls, and puzzles. Kahoot! 360, Business, Plans & Pricing *available at* https://kahoot.com/business/pricing/ (last visited June 13, 2025) (attached as Exhibit P). Many well-recognized companies use Kahoot! including TNT, Samsung, Novo Nordisk, Charles Schwab, Nestle, Johnson & Johnson, and Microsoft. 97% of Fortune 500 companies use Kahoot!

40.     Kahoot!'s educational plans are geared to school districts, universities, and individual teachers, although parents and tutors also frequently utilize the Kahoot!+ subscription. Kahoot! offers plan packages, including Kahoot! Kids, geared toward parents and students, that can be used for anything from family game nights and parties to trivia nights.

41.     The Kahoot! platform is available by the Kahoot! App, which is identified by the distinct K! Mark and available on the Apple iOS App Store, Apple MacOS App Store, Google

18

Play, Amazon App Store, and Huawei App Store. Kahoot! enables users to build their own training, presentations, and events using the Kahoot! platform. *Infra* at ¶ 18.

42.     The Kahoot! platform also is available via the Kahoot! website, including the Kahoot! 360 offerings, which Kahoot! describes as "the ultimate workforce engagement platform." Kahoot!, Enterprise *available at* https://kahoot.com/business/enterprise/ (last visited June 13, 2025) (attached as Exhibit Q).



43.    Kahoot! provides users with webinars on its website on how to use the Kahoot! platform, including how to utilize Kahoot! in a workplace training setting. Kahoot! also offers a professional development program on its platform for educators, who can become "Kahoot! Certified" for completing the Kahoot! courses. The distinctive K! Mark is the centerpiece of the "Kahoot! Certified" insignia.



44.    Kahoot! does not offer educational consulting or advisory services for others, such as developing classes, seminars, or workshops.

**Defendant CPDlive's History, Goods and Services, and Unrelated Mark**

45.    On information and belief, CPDlive offers consulting services for its customers that create "digital learning experiences … and other learning activities that foster relationships between peers to drive effective outcomes." Cahoot Learning, Why Cahoot Learning? *available at* https://www.cahootlearning.com/ (attached as Exhibit R) (last visited June 11, 2025). To wit,

CPDlive's business is to partner with an organization to design and develop online learning courses and programs. CPDlive specifically characterized itself as "a trusted organisation for producing quality adult education products." Sladen Legal Letter (dated Sept. 1, 2023) (attached as Exhibit S).

46.     On September 1, 2016, CPDlive filed USPTO App. No. 87/159,035, which registered as Registration No. 5472543 ("the CPDLIVE Mark"). A copy of the CPDLIVE Mark is attached as Exhibit T and reproduced below. On information and belief, CPDlive is the owner of the CPDLIVE Mark.

# CAHOOT LEARNING

47.     CPDlive registered the CPDLIVE Mark in connection with the following goods and services:

a. Class 41: Education services, namely, providing classes, seminars, and workshops, in the fields of adult education, business, and general education at the university, pre-college and high school levels; Educational services, namely, providing on-line, non-downloadable videos and educational courses through an online forum in the fields of adult education, business, and general education at the university, pre-college and high school levels; Educational services, namely, providing on-line, non-downloadable instructional materials in the nature of books and electronically-published course materials through an online forum in the fields of adult education, business, and general education at the university, pre-college and high school levels; Advisory services in the field of education; Providing educational assessment services; Providing information about education and training; Arranging and conducting education events in the field of adult education, business, and general education at the university, pre-college and high school levels.

48.     On information and belief, CPDlive uses the CPDLIVE Mark in connection with the offering, advertising, promotion, and sale of its educational consulting and program

development services as shown below. Cahoot Learning, Cahoot Learning Portal *available at* https://www.cahootlearning.com/products/portal.html (last visited June 13, 2025) (attached as Exhibit U).



49.    As described below, on information and belief, CPDlive advertises two case studies on its website as examples of its services, described in further detail below.

50.    On information and belief, the first case study is for CPDlive partnering with an unnamed "large global resources company," in which the customer tasked CPDlive with developing "a hybrid-learning program that brings cross-disciplinary and cross-functional teams from across the world through a 9-week digital experience followed by a 3-day on-ground resources game." Cahoot Learning, Case Study, Large global resources company + Cahoot Learning: Scaling hybrid learning in a new world *available at* https://www.cahootlearning.com/solutions/case-study-globalresources.html (last visited June 11, 2025).

51.     On information and belief, the second case study describes CPDlive partnering with the Institute of Public Works Engineering Australasia ("IPWEA"). CPDlive states that the IPWEA engaged CPDlive to redesign a 4-day face-to-face training course into a "completely digital, community-based delivery." Cahoot Learning, Case Study, IPWEA + Cahoot Learning: Building Capability in Asset Management *available at* https://www.cahootlearning.com/solutions/case-study-ipwea.html (last visited June 11, 2025).

52.     On information and belief, CPDlive also developed a dual-track professional certificates program for the Massachusetts Institute of Technology in Cambridge, Massachusetts. According to CPDlive, it developed a program "[d]esigned for working cohorts of approximately 50, with an unlimited number of cohorts running at any one time" for the purpose of mimicking the "collaborative learning experience of the classroom through the use of a broad range of synchronous and asynchronous tools and activities."

53.     Central to the CPDlive service is the customized development, implementation, and facilitation by CPDlive employees of the program, stating, "Cahoot Learning facilitators monitor and guide individual and group engagement throughout the courses." Exhibit C, PR Newswire, Cahoot Learning Announces New MIT Professional Education Professional Certificate Programs *available at* https://www.prnewswire.com/news-releases/cahoot-learning-announces-new-mit-professional-education-professional-certificate-programs-300539686.html; *see also* Exhibit D, MIT Professional Education, MIT Professional Education Launches Digital Plus Programs: An Innovative Collaborative Learning Offering *available at* https://professional.mit.edu/news/press-releases/mit-professional-education-launches-digital-plus-programs-innovative (last visited June 12, 2025).

54.    Accordingly, CPDlive's target customers are businesses that hire CPDlive to develop customized trainings with the option of also hiring the CPDlive team to facilitate the trainings.

55.    For example, on information and belief, organizations like the Australian government, the United Nations Global Compact Network Australia, Rio Tinto (a UK/Australian mining company), the Australiasian Railway Association, and Aspen Pharmacare (a South African pharmaceutical company) hire CPDlive to create tailored trainings after which it offers training "badges" to show that the trainee has completed the training as shown in the image below. Credly by Pearson, Organization, Cahoot Learning *available at* https://www.credly.com/organizations/cahoot-learning/badges (last visited June 11, 2025) (attached as Exhibit V).



56.    On information and belief, these trainings demonstrated by the "badges" on Credly are not publicly available. Instead, they are earned from CPDlive in conjunction with the CPDlive customer for whom CPDlive developed the training course.

57.    On information and belief, CPDlive advertises on its own website, but does not sell a product.

58.     Instead, CPDlive markets its consulting services in developing unique customer portal and tailored trainings for its customers and allows prospective customers to schedule a demonstration.           Cahoot           Learning,           Products, https://www.cahootlearning.com/products/journey.html (attached as Exhibit W).

59.     On information and belief, CPDlive sells its services to businesses through direct sales representatives working for CPDlive. Direct sales are finalized after contract negotiations between a CPDlive sales representative and a prospective business customer.

60.     On information and belief, in order to purchase CPDlive's services, a customer must contact CPDlive directedly to engage CPDlive by selecting "BOOK A DEMO" or "CONTACT US" as shown in the screenshot above. When electing either option, a user is taken to the following page to contact CPDlive. Cahoot Learning, Contact Us *available at* https://www.cahootlearning.com/contact-us.html (last visited June 13, 2025) (attached as Exhibit X).



61.    On information and belief, CPDlive does not have an "off-the-shelf" product or application available from an online app store.

## Coexistence Agreement

62.    During prosecution of the CPDLIVE Mark, the USPTO rejected CPDlive's application, finding confusion likely with the KAHOOT! Mark. The USPTO found "the dominant element of the applied-for mark, i.e. 'Cahoot,' is similar in pronunciation to the mark in the identified prior-filed application. Additionally, both parties use their respective marks with education related services." U.S. App. Serial No. 87/159035, Office Action (Dec. 13, 2016) (attached as Exhibit Y). The USPTO later suspended prosecution of the CPDLIVE Mark pending

prosecution of the senior KAHOOT! Mark. U.S. App. Serial No. 87/159035, Suspension Notice (July 11, 2017) (attached as Exhibit Z).

63.    On or about July 26, 2017, counsel for CPDlive contacted Kahoot! alleging that CPDlive had prior rights in the United States based on a first use date of August 2013. De Almeida Letter (July 26, 2017) (attached as Exhibit AA).

64.    Shortly after, on August 21, 2017, CPDlive filed an extension of time to oppose the KAHOOT! Mark application. U.S. App. Serial No. 86/914,940, First 90 Day Request for Extension of Time to Oppose for Good Cause (attached as Exhibit AB). As a basis for the good cause, CPDlive noted that it was "engaged in settlement discussions with" Kahoot! *Id.*

65.    On or about October 4, 2017, counsel for Kahoot! provided CPDlive with evidence of use in the United States of the KAHOOT! Mark at least six months earlier than CPDlive's alleged first use date in the United States and thereafter proposed that the parties agree to coexistence of their respective marks. Mathew Letter (Oct. 4, 2017) (attached as Exhibit AC).

66.    On or about January 19, 2018, Kahoot! and CPDlive entered into the Coexistence Agreement to facilitate CPDlive's ability to register the CPDlive Mark in the USPTO. Ex. AD, Coexistence Agreement.

67.    In the Coexistence Agreement, the parties acknowledged that "the parties are not aware of any instances of actual confusion arising from the parties' concurrent use of the respective marks since at least 2013." The parties further acknowledged that "in view of the differences between the marks and the respective goods and services, and history of concurrent use of the respective marks without evidence of any confusion, the parties believe that confusion is not likely to result from each other's use and registration." Coexistence Agreement at 1 (attached as Exhibit AD).

68.    In the Coexistence Agreement, Kahoot! and CPDlive "agree[d] and acknowledge[d] that the respective goods and services travel in separate and distinct channels of trade." *Id.* at ¶ 4.

69.    By the Coexistence Agreement, Kahoot! agreed "to use, register or attempt to register its KAHOOT! Mark in connection with game-based learning. For the sake of clarity, the KAHOOT! Applications, including the goods and/or services listed therein, are acceptable to CPDlive." *Id.* at ¶ 5.

70.    As agreed, Kahoot! registered the KAHOOT! Mark in connection with game-based learning.

71.    By the Coexistence Agreement, Kahoot! and CPDlive agreed that "Neither party will attempt in any way to associate itself with the other or its respective goods or services." *Id.* at ¶ 7.

72.    As agreed, Kahoot! has not attempted to associate itself with CPDlive or CPDlive's goods or services.

73.    By the Coexistence Agreement, Kahoot! and CPDlive agreed to "take all reasonable measures and precautions to avoid any possible confusion in the marketplace between the goods/services offered by the parties under the CAHOOT LEARNING and KAHOOT! Marks." *Id.* at ¶ 8.

74.    As agreed, Kahoot! has taken all reasonable measures and precautions to avoid any possible confusion in the marketplace between its goods and services and CPDlive's goods and services.

75.    After executing the Coexistence Agreement, CPDlive filed a "Response to Suspension Inquiry or Letter of Suspension" with the USPTO and requested removal of the

suspension. To support this request, CPDlive provided a copy of the Coexistence Agreement and argued "The parties believe there is no likelihood of confusion and are taking steps to distinguish the goods/services in the marketplace. Applicant respectfully submits there is no likelihood of confusion." U.S. App. Serial No. 87/159035, Response to Suspension Inquiry or Letter of Suspension (Jan. 22, 2018) (attached as Exhibit AE). Based on this submission, the USPTO registered the CPDLIVE Mark.

**CPDlive's Allegations of Breach and Infringement are False**

76.     On or about September 1, 2023, Craig Crowther, CEO of CPDlive, sent a letter addressed to Eilert Hanoa, CEO of Kahoot!, accusing Kahoot! of, among other things, the "unauthorized use" of the CPDLIVE Mark by the launch of the "Kahoot! 360 Engage." Crowther Letter (attached as Exhibit AF).

77.     On or about the same day, Australian counsel for CPDlive sent a letter to counsel for Kahoot! making substantially similar allegations that the "Kahoot! 360 engage and Kahoot! at work" plans infringe the CPDLIVE Mark. Exhibit S, Sladen Legal Letter (dated Sep. 1, 2023).

78.     These letters were followed by a series of letters between Australian counsel for CPDlive and counsel for Kahoot!, with the final letter sent by counsel for Kahoot! on January 3, 2024, noting that Kahoot! had not changed its business model since executing the Coexistence Agreement and asserting that CPDlive had failed to offer any instance of actual confusion between the Kahoot! platform and CPDlive's services. Richman Letter (Jan. 3, 2024) (attached as Exhibit AG). This letter provided a timeline of the correspondence between Kahoot! and CPDlive. *Id.* CPDlive did not send any response to this letter.

79.     On or about April 28, 2025, new American counsel for CPDlive sent a letter to Kahoot!'s counsel, replete with misstatements of both law and fact, alleging that Kahoot! had

breached the Coexistence Agreement, infringed the CPDLIVE Mark, and made fraudulent misrepresentations.

80.    As detailed above, CPDlive's allegations of infringement, breach of contract, and fraudulent misrepresentation are baseless.

## COUNT I

### Declaratory Judgment of Noninfringement of Trademark

81.    Kahoot! incorporates by reference paragraphs 1-80 in this Count.

82.    This is a claim for declaratory judgment pursuant to 28 U.S.C. § 2201 *et seq*.

83.    An actual controversy exists between Kahoot! and CPDlive, who have opposing interests in settling legal issues relating to alleged infringement of the CPDLIVE MARK.

84.    Specifically, CPDlive alleges that Kahoot! infringes the CPDLIVE MARK. Kahoot! disagrees and seeks the Court adjudicate this controversy.

85.    Further, CPDlive has made and alleges unreasonable and baseless damages, seeking a windfall from Kahoot!, and making clear, including providing a date certain, that it will bring suit against Kahoot! for trademark infringement.

86.    However, no likelihood of confusion to the consumers exists between the KAHOOT! Mark and the CPDLIVE Mark.

87.    A judgment from this Court will finalize this controversy and offer Kahoot! relief from this uncertainty.

## COUNT II

### Declaratory Judgment of No Breach

88.    Kahoot! incorporates by reference paragraphs 1-87 in this Count.

89.    This is a claim for declaratory judgment pursuant to 28 U.S.C. § 2201 *et seq*.

90.     An actual controversy exists between Kahoot! and CPDlive, who have opposing interests in settling legal issues relating to the alleged breach of the Coexistence Agreement.

91.     Specifically, CPDlive alleges that Kahoot! breached the Coexistence Agreement. Kahoot! disagrees and seeks the Court adjudicate this controversy.

92.     Further, CPDlive has made and alleges unreasonable and baseless damages, seeking a windfall from Kahoot!, and making clear, including providing a date certain, that it will bring suit against Kahoot! for breach of contract.

93.     A judgment from this Court will finalize this controversy and offer Kahoot! relief from this uncertainty.

## COUNT III

### Declaratory Judgment of No Fraudulent Misrepresentation

94.     Kahoot! incorporates by reference paragraphs 1-93 in this Count.

95.     This is a claim for declaratory judgment pursuant to 28 U.S.C. § 2201 *et seq*.

96.     An actual controversy exists between Kahoot! and CPDlive, who have opposing interests in settling legal issues relating to alleged fraudulent misrepresentations.

97.     Specifically, CPDlive alleges that Kahoot! made fraudulently misrepresentations to CPDlive causing CPDlive injury. Kahoot! disagrees and seeks the Court adjudicate this controversy.

98.     Further, CPDlive has made and alleges unreasonable and baseless damages, seeking a windfall from Kahoot!, and making clear, including providing a date certain, that it will bring suit against Kahoot! for fraudulent misrepresentation.

99.     A judgment from this Court will finalize this controversy and offer Kahoot! relief from this uncertainty.

**COUNT IV**

**Declaratory Judgment of No Unjust Enrichment**

100.     Kahoot! incorporates by reference paragraphs 1-99 in this Count.

101.     This is a claim for declaratory judgment pursuant to 28 U.S.C. § 2201 *et seq*.

102.     An actual controversy exists between Kahoot! and CPDlive, who have opposing interests in settling legal issues relating to alleged unjust enrichment.

103.     Specifically, CPDlive alleges that Kahoot! unjustly enriched itself at CPDlive's detriment causing CPDlive injury. Kahoot! disagrees and seeks the Court adjudicate this controversy.

104.     Further, CPDlive has made and alleges unreasonable and baseless damages, seeking a windfall from Kahoot!, and making clear, including providing a date certain, that it will bring suit against Kahoot! for unjust enrichment.

105.     A judgment from this Court will finalize this controversy and offer Kahoot! relief from this uncertainty.

**COUNT V**

**Declaratory Judgment of Lack of Harm from Continued Use**

106.     Kahoot! incorporates by reference paragraphs 1-105 in this Count.

107.     This is a claim for declaratory judgment pursuant to 28 U.S.C. § 2201 *et seq*.

108.     An actual controversy exists between Kahoot! and CPDlive, who have opposing interests in settling legal issues relating to alleged harm to CPDlive.

109.     Specifically, CPDlive alleges that Kahoot! has harmed CPDlive by the use of the KAHOOT! Mark. Kahoot! disagrees and seeks the Court adjudicate this controversy.

110.     Kahoot! is entitled to judgment declaring that CPDlive has not been harmed or damaged by Kahoot!'s use of, and registration of, the KAHOOT! Mark.

111.    A judgment from this Court will finalize this controversy and offer Kahoot! relief from this uncertainty.

## DEMAND FOR RELIEF

112.    Accordingly, Kahoot! respectfully requests that the Court grant Kahoot! the following relief:

a.  Declaring Kahoot! has the right to use the KAHOOT! Mark without interference from CPDlive;

b.  Declaring that Kahoot! does not infringe the CPDLIVE Mark;

c.  Declaring Kahoot!'s use of the KAHOOT! Mark does not cause confusion, mistake, or deception as to the source, association, or affiliation of its goods and services with those of CPDlive;

d.  Declaring Kahoot!'s use of the KAHOOT! Mark does not harm the goodwill represented by CPDlive's valid use, if any, of the CPDLIVE Mark;

e.  Declaring that Kahoot! did not breach the Coexistence Agreement;

f.  Declaring that Kahoot! did not commit fraudulent misrepresentation;

g.  Declaring that Kahoot! did not unjustly enrich itself;

h.  Declaring that CPDlive has not and will not be harmed or damaged by Kahoot!'s use of the KAHOOT! Mark;

i.  Permanently enjoining CPDlive and its officers, directors, agents, employees, counsel, contractors, or any person acting in conjunction with CPDlive or on its behalf from alleging, asserting, or otherwise stating that Kahoot!'s past and present use of the KAHOOT! Mark infringes any right of CPDlive or from threatening or prosecuting any action against Kahoot! based on the use of the KAHOOT! Mark;

j.  Declaring this case exceptional under 15 U.S.C. § 1117(a) and awarding to Kahoot! its reasonable attorneys' fees; and

k.  Awarding Kahoot! any other relief as the Court deems just and proper.

Dated: <u>June 18, 2025</u>          Respectfully Submitted,

Kahoot! AS

By its Attorneys:

<u>/s/ *Tony K. Lu*</u>         
Tony K. Lu, Esq. (BBO#678791)
**Dentons US LLP**
101 Federal Street, Suite 1900
Boston, MA 02110
Telephone: (617) 235-6817
tony.lu@dentons.com

Daniel Schnapp (*pro hac vice* forthcoming)
Monica Richman (*pro hac vice* forthcoming)
**Dentons US LLP**
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 768-6700
daniel.schnapp@dentons.com
monica.richman@dentons.com

Nicholas H. Jackson (*pro hac vice* forthcoming)
**Dentons US LLP**
1900 K Street NW
Washington, DC 20006
Telephone: (202) 496-7500
nicholas.jackson@dentons.com

*Counsel for Plaintiff Kahoot! AS*