UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **KAHOOT! AS,** | ) |
|   Plaintiff, | ) |
| v. | ) Civil Action No.<br>) 25-11783-BEM |
| **CPDLIVE PTY LTD.,** | ) |
|   Defendant. | ) |

**MEMORANDUM AND ORDER ON**
**DEFENDANT'S MOTION TO DISMISS OR TRANSFER**

**MURPHY, J.**

Defendant CPDLive Pty Ltd. moves to dismiss or transfer this trademark declaratory judgment action brought by Plaintiff Kahoot! AS. For the reasons stated herein, the Court will deny the motion.

**I.   Background**

Plaintiff and Defendant are both foreign corporations providing online products and services to the education market.[1] Dkt. 1 ("Compl.") ¶¶ 17, 45. Plaintiff is based in Norway. *Id.* ¶ 5. Defendant is based in Australia. *Id.* ¶ 6.

In 2018, while both had pending applications for similar trademarks—"Kahoot!" (Plaintiff) and "Cahoot Learning" (Defendant)—the parties executed a Coexistence Agreement, rather than contest each other's mark. *Id.* ¶¶ 62–66. The Coexistence Agreement contemplates that each party

---

[1] The precise characterization of each party's offerings is relevant to the merits of this case but not to the instant motion. Accordingly, the Court intentionally papers over these differences (or lack thereof) for present purposes. Likewise, the Court will refer to the parties simply as Plaintiff and Defendant for ease of reading and to avoid seeming to implicitly favor one party's claim to the "[K/C]ahoot" title.

operates in "separate and distinct channels of trade" and generally sets out terms for steering clear of one another in the market. *Id.* ¶¶ 67–69.

In September 2023, Defendant first suggested that Plaintiff was in breach of their Coexistence Agreement. *Id.* ¶¶ 77–78. By no later than April 28, 2025, that suggestion had turned into a full-blown accusation. *Id.* ¶ 79. In its April 28, 2025 letter, Defendant stated that, "[a]bsent a satisfactory response," it would file suit in California federal court "on or around July 12, 2025." Dkt. 1-1 at 6. Following further correspondence in May and June 2025, Plaintiff's counsel agreed to "discuss" an invitation to mediate with his client and later scheduled a call among the parties. Dkt. 11-5 at 3–5. On June 18, 2025—two days before that call was to take place—Plaintiff filed suit in this Court, seeking declaratory judgment as to the contested mark. *See* Compl. Several days later, Defendant filed its own parallel, affirmative trademark suit in the Northern District of California. *See generally* Dkt. 11-3.

On July 31, 2025, Defendant moved to dismiss or transfer the instant action. Dkt. 10. As to dismissal, Defendant argues that the Court lacks personal jurisdiction over it, Dkt. 11 ("Memo.") at 12–21, or that the Court should decline jurisdiction under the Declaratory Judgment Act, *id.* at 21–23. Alternatively, Defendant seeks transfer to the Northern District of California, arguing that such transfer would be in the interests of fairness and convenience. *Id.* at 23–25.

On August 14, 2025, Plaintiff opposed. Dkt. 26 ("Opp."). The Court held oral argument on September 22, 2025, and took the motion under advisement. Dkt. 33.

## II. **Personal Jurisdiction**

The Court finds that it has specific personal jurisdiction over Defendant based on Defendant's trademark-building activities in Massachusetts.

### A.     Legal Standard

#### 1.     In General

"When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the 'prima facie' standard governs its determination." *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001). "That approach asks only whether the plaintiff has proffered facts that, if credited, would support all facts essential to personal jurisdiction." *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 121 (1st Cir. 2022) (cleaned up). "It is [the plaintiff's] burden to proffer evidence 'sufficient to support findings of all facts essential to personal jurisdiction,' and to do so without relying on unsupported allegations." *LP Sols. LLC v. Duchossois*, 907 F.3d 95, 102 (1st Cir. 2018) (quoting *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016)). Generally, the Court "must accept [the plaintiff's] properly documented evidentiary proffers as true and construe them in the light most favorable to [the plaintiff's] jurisdictional claim." *A Corp.*, 812 F.3d at 58.

"Questions of specific jurisdiction are always tied to the particular claims asserted." *Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 289 (1st Cir. 1999). Moreover, "the [specific] personal jurisdiction inquiry in federal question cases . . . differs from the inquiry in diversity cases."[2] *Swiss Am.*, 274 F.3d at 618. Here, the Court's subject matter jurisdiction is premised on federal questions arising under the Lanham Act.[3] Accordingly, the Court proceeds with that analysis.

---

[2] Plaintiff does not contend that Defendant is subject to general jurisdiction in Massachusetts. *See* Opp. at 10–18.

[3] Plaintiff also raises closely related declaratory judgment claims based on common law. Compl. ¶¶ 88–105. In this case, because the Court finds personal jurisdiction appropriate under the Massachusetts long-arm statute, as limited by the Fourteenth Amendment, the diversity and federal-question inquiries collapse. Alternatively, specific personal jurisdiction over the declaratory common-law claims would be appropriate under the doctrine of pendent personal jurisdiction. *See Nahigian v. Leonard*, 233 F. Supp. 2d 151, 159–60 (D. Mass. 2002).

### 2. Federal Question

Where the Court's subject matter jurisdiction is based on the presence of federal questions, specific jurisdiction requires satisfaction of a federal statute or rule authorizing service of process and comportment with the Fifth Amendment. *Swiss Am.*, 274 F.3d at 618.

#### a. Fed. R. Civ. P. 4(k)(1)

"In the mine-run of federal question cases, Federal Rule of Civil Procedure 4(k)(1) erects the framework for establishing personal jurisdiction by service of process." *Motus*, 23 F.4th at 121. "Under this framework, personal jurisdiction may derive either from a state long-arm statute that sets the boundaries of a state court's jurisdictional reach or from a federal statute permitting nationwide personal jurisdiction by service of process." *Id.* at 121–22.

Where, as here, a plaintiff relies upon a state's long-arm statute, exercise of that long-arm statute must also comport with the Fourteenth Amendment. *Id.* at 122.

##### i. Long-Arm Statute

The Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3 ("223A, § 3"), "sets out a list of specific instances in which a Massachusetts court may acquire personal jurisdiction over a nonresident defendant." *Tatro v. Manor Care, Inc.*, 416 Mass. 763, 767 (1994). "A plaintiff has the burden of establishing facts to show that the ground relied on under § 3 is present." *Exxon Mobil Corp. v. Att'y Gen.*, 479 Mass. 312, 317 (2018) (quoting *Tatro*, 416 Mass. at 767).

Plaintiff invokes subsection (a) of the long-arm statute, Opp. at 10, which provides that:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's
> 
> (a) transacting any business in this commonwealth;

223A, § 3(a).

"The 'arising from' clause in [section 3] is to be generously construed in favor of asserting personal jurisdiction, by applying a 'but for' causation test." *Workgroup Tech. Corp. v. MGM*

4

*Grand Hotel, LLC*, 246 F. Supp. 2d 102, 112 (D. Mass. 2003) (citing *Tatro*, 416 Mass. at 771–72). Subsection 3(a) is likewise construed "very broadly." *The Scuderi Grp., LLC v. LGD Tech., LLC*, 575 F. Supp. 2d 312, 318 (D. Mass. 2008). For example, a "defendant need not be physically present in a state to 'transact business' in that state." *M-R Logistics, LLC v. Riverside Rail, LLC*, 537 F. Supp. 2d 269, 275 (D. Mass. 2008).

### ii.     Fourteenth Amendment

The Fourteenth Amendment requires that a plaintiff's claims "arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (internal quotes omitted). Moreover, a defendant must be found to have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Finally, the exercise of jurisdiction must be "reasonable." *Id.* at 358 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945)). These limitations reflect "two sets of values—treating defendants fairly and protecting 'interstate federalism.'" *Id.* at 360 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980)). "The plaintiff must demonstrate that each of these three requirements is satisfied." *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 27 (1st Cir. 2008).

The relatedness inquiry probes the connection between a defendant's contacts with the forum and the plaintiff's claims. Relatedness is satisfied where a defendant's in-state contacts are "sufficiently related" to the claims, such to "justify subjecting a defendant to personal jurisdiction there." *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, 2024 WL 3696388, at *11 (D. Mass. Aug. 7, 2024) (citing *Ford Motor*, 592 U.S. at 362). Notably, the Fourteenth Amendment does not require a "strict causal relationship between the defendant's in-state activity and the litigation." *Ford Motor*, 592 U.S. at 362.

The purposeful availment inquiry considers the intentionality of those forum contacts, "ask[ing] whether a defendant has deliberately targeted its behavior toward the society or economy of a particular forum such that the forum should have the power to subject the defendant to judgment regarding that behavior." *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 36 (1st Cir. 2016) (cleaned up).  This requirement guards against courts' asserting jurisdiction based on "random, isolated or fortuitous contacts" or "the unilateral activity of another party." *Id.*

"To evaluate the reasonableness requirement, the Supreme Court has provided a set of 'gestalt factors' to consider." *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 10 (1st Cir. 2009) (quoting *N. Laminate Sales, Inc. v. Davis*, 403 F.3d 14, 26 (1st Cir. 2005)).  "These factors include: the defendant's burden of appearing, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of the controversy, and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

### b.   Fifth Amendment

Analysis under the Fifth Amendment's Due Process Clause is identical to that under the Fourteenth Amendment's, except that, "under the Fifth Amendment, a plaintiff need only show that the defendant has adequate contacts with the United States as a whole, rather than with a particular state." *Swiss Am.*, 274 F.3d at 618; *see also Sec. & Exch. Comm'n v. Gastauer*, 93 F.4th 1, 8 (1st Cir. 2024).  Accordingly, where the Fourteenth Amendment's Due Process Clause is satisfied, the Fifth Amendment's Due Process Clause is necessarily also satisfied.

**B.     Discussion**

There is a surprising lack of authority addressing the problem of personal jurisdiction in a declaratory judgment action, where the parties' normal positions are swapped across the "v."  For a declaratory judgment trademark action, such as this one, Defendant primarily suggests borrowing the rule from patent and looking only at its "enforcement activities."  *See* Memo. at 17–18 & n.5 (citing, *e.g.*, *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324 (Fed. Cir. 2008)).[4]  Plaintiff takes the broader view and argues that Defendant's "business activit[ies]" are generally relevant because, unlike in patent, assertion of trademark rights requires proving actual use in commerce.  *See* Opp. at 11–12.

The Court finds instructive the Ninth Circuit's reasoning in *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 2561 (2024).  The *Impossible Foods* court declined to adopt the rule from patent, which would have limited consideration to the defendant's enforcement activities, holding instead that "an action seeking a declaration of trademark non-infringement can . . . arise out of, or at the very least relate to,

---

[4] At oral argument, Defendant made clear its position that the Court should focus primarily on enforcement activities.  However, its briefing is less consistent.  For example, Defendant cites *Travel Sentry, Inc. v. Tropp*, 2006 WL 3478997 (D.N.H. Dec. 1, 2006), another patent case applying Federal Circuit law, for the proposition that courts may consider a "variety of contacts."  Memo. at 17–18.  This is confusing, both because a broader approach favors Plaintiff, rather than Defendant, and because, although the *Travel Sentry* defendant did submit an affidavit disclaiming a wide swath of forum contacts, it is not obvious that the court considered relevant any of those broader non-contacts.  *See Travel Sentry*, 2006 WL 3478997, at *5.  Moreover, Defendant's non-contact with Massachusetts is not really comparable to the *Travel Sentry* defendant's non-contact with New Hampshire.  *See id.* (noting the defendant's assertion that he "does not conduct business in New Hampshire [and] has never visited the state").  It may be that Defendant is somewhat forced into making this mixed argument because of Plaintiff's Rule 4(k)(2) argument, discussed n.6, *infra*.

trademark building activities in a forum state" because those activities are what result in "the trademark rights themselves." *Id.* at 1094.[5]

The Ninth Circuit's contract analogy is apposite. *See id.* at 1095 ("In a declaratory judgment for breach of contract . . . we would not limit ourselves to the circumstances surrounding ['a letter accusing one party of breach'] in defining the relevant contacts for specific personal jurisdiction purposes, while ignoring the whole of the parties' relationship."). In a declaratory judgment contract action, relevant activities would include those that are "instrumental either in the formation of the contract or its breach." *Adelson v. Hananel*, 510 F.3d 43, 49 (1st Cir. 2007) (quoting *Phillips Exeter Acad.*, 196 F.3d at 289). Thus, personal jurisdiction can be said to arise out of activities that generate the (contract) rights relied upon in the affirmative case. In this case, the affirmative rights relied upon are trademark rights. Thus, the Court looks to "brand-building activities" out of which such rights arise. *See Impossible Foods*, 80 F.4th at 1087.

With that framework established, the Court finds Plaintiff's proffer sufficient at this stage. The facts put forward show that Defendant has transacted substantial business in the Commonwealth, out of which the trademark rights at issue (and so the declaratory suit) arise, *see* Compl. ¶¶ 9–12, satisfying relevance and the long-arm statute. These business contacts include a partnership with the Massachusetts Institute of Technology ("MIT") to offer professional certificate programs. *Id.* ¶¶ 11–12. Defendant claims that this partnership ended in 2020. *See* Dkt. 11-1 ¶ 9. However, Defendant continues to prominently feature MIT and other

---

[5] Distinguishing the Federal Circuit's patent rule, the Ninth Circuit pointed out that, "because a patent creates the right to exclude but not 'any affirmative right to make, use, or sell anything,' a defendant patentee's sale of products in the forum state 'is of no real relevance.'" *Impossible Foods*, 80 F.4th at 1093 (quoting *Avocent*, 552 F.3d at 1335). To that analysis, this Court would only add that the two approaches are not necessarily irreconcilable. Trademark rights arise out of use and include the right to "prevent[] others from using the mark." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 142 (2015). Trademark use is therefore a necessary predicate to enforcement, and one might reasonably conceive of use as a kind of (pre-)enforcement activity in and of itself.

Massachusetts-based clients through testimonials on its website. Dkt. 1-2. By specifically highlighting this Massachusetts-based business, Defendant reinforces the "brand-building" import of its Commonwealth contacts and prospectively "target[s] its behavior toward the . . . [Massachusetts] economy," satisfying purposeful availment. *See Baskin-Robbins*, 825 F.3d at 36. The Court moreover finds the exercise of jurisdiction reasonable. Defendant, a foreign company, has not shown that appearance in Massachusetts would be so much more burdensome than in California, where it would prefer to have the dispute heard.[6]

## III. Declaratory Judgment

The Court declines Defendant's invitation to refuse jurisdiction. "Though the declaratory judgment context may serve to relax a federal court's storied obligation to exercise the jurisdiction given to it by Congress, the decision not to exercise jurisdiction must still be based on a careful balancing of efficiency, fairness, and the interests of both the public and the litigants." *Riva v. Massachusetts*, 61 F.3d 1003, 1012 (1st Cir. 1995) (internal citation omitted).

Defendant bases its argument on the anticipatory exception to the first-to-file rule. That exception may justify a court's decision to decline jurisdiction where a plaintiff "(1) misleads the defendant into foregoing litigation in order to negotiate a settlement and then files suit or (2) reacts to a defendant's notice of imminent filing by 'literally sprinting to the courthouse the same day.'"

---

[6] Finally, the Court notes another route to the same result. In its opposition, Plaintiff asserted, in the alternative, that personal jurisdiction could obtain under Federal Rule 4(k)(2), applicable where personal jurisdiction is constitutionally permissible under the Fifth Amendment (as to the entire United States) but where no state or federal long-arm statute provides. *See* Opp. at 17–18 (citing Fed. R. Civ. P. 4(k)(2)). Defendant rebuffs by pointing to its California contacts, which Defendant argues show its "active, ongoing, and substantial business" in the state. Memo. at 20 (citing Dkt. 11-1 ¶¶ 17, 19, 21). Under *Impossible Foods* (which notably would bind in a California federal court), Defendant would most likely be correct—but, here's the rub, not because of any enforcement activities. In other words, if the Court were to apply the strong form of Defendant's enforcement-activities-only argument, then there would be jurisdiction in no forum, and Federal Rule 4(k)(2) would apply. However, once the Court begins considering "business" generally, as Defendant asks the Court to do in assessing whether California could assert jurisdiction, then Massachusetts becomes proper by the normal method.

*Holmes Grp., Inc. v. Hamilton Beach/Proctor Silex, Inc.*, 249 F. Supp. 2d 12, 16 (D. Mass. 2002) (quoting *Veryfine Prods., Inc. v. Phlo Corp.*, 124 F. Supp. 2d 16, 22 (D. Mass. 2000)).

Obviously, Plaintiff did not "sprint[] to the courthouse the same day." *See id.* Indeed, if this was a "race to the courthouse," *id.*, Plaintiff must be a slow runner. Rather, seven weeks elapsed between Defendant's prompting letter—itself prefaced by years of back and forth, *see* Dkt. 1-1 at 4 (citing an initial "concern" letter dated September 13, 2023)—and Plaintiff's filing suit. *Cf. Holmes*, 249 F. Supp. 2d at 16–17 (finding that plaintiff who filed suit one month after receiving cease-and-desist letter "did not immediately race to the courthouse").

Moreover, there is no indication that Defendant "fore[went] litigation," and so it is impossible for Plaintiff to have "misle[d]" Defendant to that end. *See id.* To the contrary, Defendant broadcasted that it would file its complaint in July 2025 and then did so *earlier* than intended (albeit, after Plaintiff), in June 2025. Dkt. 11-3. Having shown its hand, and with no indication that it would have changed that drop-dead date had Plaintiff responded differently, Defendant cannot now claim to have "deferred filing." *Cf. Davox Corp. v. Digit. Sys. Int'l, Inc.*, 846 F. Supp. 144, 148 (D. Mass. 1993).[7] Without this reliance element, the Court declines to dismiss.

---

[7] It is also worth noting that *Davox* is a patent case and so presents different considerations. *See Davox*, 846 F. Supp. at 148. A patentee rarely has all the information about how a potentially infringing product works and so must "make a fair investigation" before it can responsibly commence litigation. *Id.* (quoting *Am. Needle & Novelty Co. v. Schuessler Knitting Mills, Inc.*, 379 F.2d 376 (7th Cir. 1967)). Would-be defendants may be able to demonstrate "that [their] product d[oes] not, in fact, infringe on [the patentee's] patent." *Id.* By contrast, trademark cases necessarily turn on public-facing information and so require a different (not necessarily as collaborative) kind of pre-suit inquiry. Of course, this is not to say that parties are not encouraged to settle disputes among themselves, including after the filing of litigation. *See, e.g.*, *Biogen, Inc. v. Schering AG*, 954 F. Supp. 391, 394–99 (D. Mass. 1996) (distinguishing *Davox* and denying dismissal where the plaintiff filed suit prior to settlement talks because such filing was not for the purpose of "lulling defendants into delaying suit"). However, it cannot be the case that a plaintiff gets to call dibs on its preferred forum simply by sending a demand letter.

## IV.     Transfer

Finally, the Court does not find transfer appropriate.  Plaintiff has filed in this Court, and "[t]he plaintiff's forum choice should rarely be disturbed," unless other factors "weigh heavily on the side of trial in the foreign forum." *See Blue Cross & Blue Shield of Mass., Inc. v. Regeneron Pharms., Inc.*, 633 F. Supp. 3d 385, 390 (D. Mass. 2022) (internal quotation marks and ellipsis removed) (quoting *Mercier v. Sheraton Int'l, Inc.*, 935 F.2d 419, 424 (1st Cir. 1991)).  Besides the plaintiff's choice of forum, other relevant factors can include "the convenience of the witnesses and location of documents[;] . . . the law to be applied[;] . . . the connection between the forum and the issues[;] . . . the state or public interests at stake[;] and . . . the relative convenience of the parties." *OsComp Sys., Inc. v. Bakken Exp., LLC*, 930 F. Supp. 2d 261, 273 (D. Mass. 2013).

Here, each party asserts that it has witnesses in its preferred forum and that the other party also has individuals whom it could call in that forum.  Memo. at 25; Opp. at 23.  Thus, the Court finds that the convenience factors pull equally in both directions.  Because this case presents federal questions, the law to be applied would be the same in either forum.  Defendant might have a stronger argument that California has the stronger connection to the case's issues, but the Court agrees with Plaintiff that the public interest favors the District of Massachusetts, where cases come to trial nearly a year faster than in the disproportionately burdened Northern District of California.[8] *See* Opp. at 24–25.

---

[8] To be absolutely clear, the Court assumes this to result simply from the numerosity, density, and complexity of matters arising in that District, rather than from any lack of diligence by its courts.

## V. <u>Conclusion</u>

For the foregoing reasons, Defendant's motion is DENIED.

**So Ordered.**

                                                    /s/ Brian E. Murphy
                                                    Brian E. Murphy
Dated:  September 30, 2025           Judge, United States District Court