**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| **KAHOOT! AS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.** |
| **v.** | ) | **25-11783-BEM** |
| | ) | |
| **CPDLIVE PTY LTD.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM AND ORDER ON**
**PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

**MURPHY, J.**

This is an action arising out of a trademark dispute between Plaintiff Kahoot! AS ("Plaintiff") and CPDlive Pty Ltd. d/b/a Cahoot Learning ("Defendant").[1]  Plaintiff moves for leave to file a first amended complaint to assert additional factual allegations and five new claims, which Defendant opposes as futile.  For the reasons stated below, the Court will grant in part and deny in part Plaintiff's motion for leave to amend.  Plaintiff is granted leave to amend with respect to Count VI, VII, and VIII consistent with this opinion.  Plaintiff is denied leave to amend with respect to Counts IX and X.

## I.    Background

### A.    Factual Background

The Court has previously laid out much of the relevant factual and legal background.  *See generally Kahoot! AS v. CPDLive Pty Ltd.*, 2025 WL 2785102 (D. Mass. Sept. 30, 2025).

---

[1] As in previous orders, the Court will refer to the parties simply as Plaintiff and Defendant for ease of reading and to avoid seeming to implicitly favor one party's claim to the "[K/C]ahoot" title.

However, Plaintiff's proposed first amended complaint contains new factual allegations. *See generally* Dkt. 74-2 ("First Amended Complaint" or "FAC"). The Court summarizes the relevant new factual allegations here, treating them as true for the purposes of this motion.

Plaintiff and Defendant, both foreign corporations, each registered their respective U.S. trademarks in 2016. FAC ¶¶ 25, 51. In 2017, counsel for Defendant contacted Plaintiff alleging that Defendant "had prior rights in the United States based on a claimed first use date of August 2013." *Id.* ¶ 70. Plaintiff alleges this letter was sent "with the explicit intent of inducing [Plaintiff] into entering" into an agreement with Defendant. *Id.* In January 2018, Plaintiff and Defendant did so, executing an agreement, the terms of which applied in the United States and Australia. *Id.* ¶¶ 73–74; *see generally* Dkt. 76-9 (the "Coexistence Agreement"). The Coexistence Agreement also contained a representation by Defendant that it had used its mark in the United States since 2013. FAC ¶ 74. This representation, Plaintiff alleges, was "intentionally misleading and materially false." *Id.* ¶ 75 (citing to documents that allegedly indicate Defendant's "first commercial use in the United States did not occur until approximately 2015"). The Coexistence Agreement was intended to govern the parties' use of their trademarks to avoid future conflict and confusion. FAC ¶¶ 76–87.

In 2023, the parties' relationship began to deteriorate when Defendant accused Plaintiff of breaching the Coexistence Agreement by engaging in "unauthorized use" of Plaintiff's mark. *Id.* ¶¶ 89–91. The parties exchanged letters into 2024 regarding Defendant's claims. *Id.* ¶ 91. In April 2025, Defendant's counsel sent a new letter, accusing Plaintiff of "breach[ing] the Coexistence Agreement," infringing on its mark, and "[making] fraudulent misrepresentations." *Id.* ¶ 92.

Plaintiff now alleges that *Defendant* breached multiple provisions of the Coexistence Agreement, including restricting Plaintiff's use of its mark, misusing Defendant's own mark, and failing to abide by provisions designed to encourage mutual problem-solving. *Id.* ¶¶ 94–98. Plaintiff also alleges that, in recent years, Defendant has engaged in "minimal, sporadic, and insufficient" use of its mark in the United States. *Id.* ¶ 107. Plaintiff further asserts that Defendant has had "no customers or use in the United States" since "its relationships with MIT, Stanford, and Brighter Professional Development concluded." *Id.* ¶ 110.

### B.    Procedural Background

On June 18, 2025, Plaintiff filed suit in this Court, bringing five declaratory judgment claims related to the parties' contested marks. Dkt. 1. A few days later, Defendant filed a parallel, affirmative trademark suit in the United States District Court for the Northern District of California. *See generally* Dkt. 11-3. On July 31, 2025, Defendant moved to dismiss or transfer the action before this Court to the Northern District of California. Dkt. 10. The Court denied the motion on September 30, 2025. Dkt. 37. The parties exchanged initial disclosures on October 28, 2025.[2] *See generally* Dkt. 46.

On March 20, 2026, Plaintiff filed a motion for leave to file a first amended complaint. Dkt. 73; *see also* Dkt. 74 ("Memo."); Dkt. 83 ("Opp."); Dkt. 85 ("Reply").[3] In its proposed First Amended Complaint, Plaintiff adds five new claims against Defendant: fraudulent inducement (Count VI); breach of contract (Count VII); cancellation of Defendant's trademark for non-use and abandonment under 15 U.S.C. § 1064 (Count VIII); unfair competition or false designation of origin under 15 U.S.C. § 1125(a)(1)(A) (Count IX); and unfair trade practices under Mass. Gen.

---

[2] Fact discovery is scheduled to be completed by June 26, 2026. Dkt. 71.

[3] The Court set a deadline of March 20, 2026 for Plaintiff to file any amendments to the pleadings. Dkt. 46.

Laws ch. 93A, § 11 (Count X).  FAC ¶¶ 142–71.  The Court heard argument on May 21, 2026, and took the motion under advisement.

## II.    Standard of Review

Courts considering motions for leave to amend are given discretion under Federal Rule of Civil Procedure 15(a)(2), which instructs courts to "freely give leave when justice so requires." *See also Farkas v. Tex. Instruments, Inc.*, 429 F.2d 849, 851 (1st Cir. 1970) ("[A]mendment of pleadings is largely a matter within the discretion of the district court.").  However, "amendment is not warranted if it would be futile or reward undue or intended delay." *Vilaythong v. Sterling Software, Inc.*, 353 F. Supp. 3d 87, 93 (D. Mass. 2018) (citing *Resol. Tr. Corp. v. Gold*, 30 F.3d 251, 253 (1st Cir. 1994)).  When reviewing a proposed amended complaint for futility, a district court "applies the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion" to dismiss for failure to state a claim.  *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996).

Courts analyzing claims under Federal Rule of Civil Procedure 12(b)(6) must determine whether a plaintiff's factual allegations—disregarding all "conclusory" statements—"state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In making its determination, a court must "accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor." *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012).  At the pleading stage, a plaintiff need not demonstrate that he is likely to prevail, but the "claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'" *García-Catalán v. United States*, 734 F.3d 100, 102–03 (1st Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).  "The inquiry is usually limited to the facts alleged in the complaint, incorporated into the complaint, or susceptible to judicial notice," *Whelden v. U.S. Bank Nat'l Ass'n*, 494 F. Supp. 3d 68, 73 (D. Mass. 2020) (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir.

4

2003)), "but the court may also consider other documents the authenticity of which is not disputed by the parties, documents central to the plaintiff's claim, and documents sufficiently referred to in the complaint," *id.* (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).

### III.     Discussion

Defendant objects to the five new counts based on futility.[4]  The Court considers each count in turn.

#### A.     Fraudulent Inducement (Count VI)

Plaintiff alleges it was fraudulently induced to enter into the Coexistence Agreement.  FAC ¶¶ 142–46.  Specifically, Plaintiff claims that Defendant misrepresented the nature and timeline of Defendant's United States commercial relationships by affirming it had prior rights in the United States as early as August 2013.  *Id.* ¶¶ 99–102.  Absent this alleged misrepresentation, Plaintiff asserts it would not have entered into the Coexistence Agreement.  *Id.* ¶ 102.  In addition to raising a statute of limitations defense, Defendant argues the claim is futile for failure to meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)").  Opp. at 8.

Defendant first argues that Plaintiff's fraudulent inducement claim is time-barred.  Under Massachusetts law, the statute of limitations period for fraudulent inducement claims is three years

---

[4] Defendants do not argue that Plaintiff's motion causes undue delay—and the Court would not find undue delay.  The Court's schedule permitted amendments to the pleadings up and until the filing date, March 20, 2026. Dkt. 46.  This is an indicator of timeliness.  *See e.g.*, *Cooper v. Charter Comms. Ent. I, LLC*, 2015 WL 1943858, at *5 (D. Mass. Apr. 28, 2015) ("Plaintiffs filed their motion for leave to amend within the time permitted under the first scheduling order issued in the case.").

from the date the action accrues.[5] *Pilalas v. Cadle Co.*, 695 F.3d 12, 14 (1st Cir. 2012) ("[T]he limitations period under [Massachusetts] state law is three years for fraud claims."). Massachusetts, however, applies the "discovery rule" to toll the statute of limitations for fraud claims until "the plaintiff discovers or with reasonable diligence should have discovered that (1) [it] has suffered harm; (2) [its] harm was caused by the conduct of another; and (3) the defendant . . . caused that harm." *Davalos v. Bay Watch, Inc.*, 494 Mass. 548, 552 (2024) (internal quotation marks omitted) (noting the discovery rule "applies to a wide variety of tort claims," including fraudulent misrepresentation); *see also Evans v. Lorillard Tobacco Co.*, 465 Mass. 411, 449 (2013) ("[U]nder our discovery rule, a claim accrues and the statute of limitations clock commences when a plaintiff knows, or reasonably should have known, 'that she has been harmed or may have been harmed by the defendant's conduct.'" (quoting *Bowen v. Eli Lilly & Co.*, 408 Mass. 204, 205–06 (1990))). Generally, whether a plaintiff exercised reasonable diligence or

---

[5] Massachusetts choice-of-law principles require the Court to apply the law of the jurisdiction where the fraudulent inducement occurred. *Cornwell Ent., Inc. v. Anchin, Block & Anchin, LLP*, 830 F.3d 18, 34 (1st Cir. 2016) ("[W]here claims sound in tort, Massachusetts courts consider, among other things, the place where the injury occurred, the place where the conduct causing the injury occurred, the domicil, residence, nationality, place of incorporation and place of business of the parties, and the place where the relationship, if any, between the parties is centered." (internal quotation marks omitted)). Both Plaintiff and Defendant spill significant ink debating whether the Massachusetts statute of limitations applies to Plaintiff's claim. Opp. at 12–13; Reply at 5–6. They also cite extensively to Massachusetts cases on fraudulent inducement. Opp. at 14–19; Reply at 6–8. But neither party articulates exactly *why* Massachusetts law should apply to this case concerning two foreign corporations. However, "when the parties agree on the substantive law that should govern, 'we may hold the parties to their plausible choice of law, whether or not that choice is correct.'" *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 23 (1st Cir. 2011) (quoting *Perry v. Blum*, 629 F.3d 1, 8 (1st Cir. 2010)); *see also Actus Fund, LLC v. Drone Guarder, Inc.*, 663, F. Supp. 3d 28, 36 (D. Mass. 2023) (applying Massachusetts law where the parties' briefs exclusively relied on Massachusetts law). The Court therefore looks to Massachusetts common law fraudulent inducement for this claim.

6

should have known about their injury "is a factual question that is appropriate for the trier of fact." *Koe v. Mercer*, 450 Mass. 97, 101 (2007).[6]

Here, Defendant argues sufficient facts were available at the time the Coexistence Agreement was signed to put Plaintiff on inquiry notice of any alleged fraud, and that Plaintiff fails to allege its own due diligence. Opp. at 12–13. But Plaintiff asserts that it learned of Defendant's alleged misrepresentations only through discovery in this case. FAC ¶¶ 7, 75. Factual disputes related to the discovery rule are generally not resolvable on a motion to dismiss, unless "no set of facts would entitle the plaintiff to relief." *Abdallah v. Bain Cap. LLC*, 880 F. Supp. 2d 190, 198 (D. Mass. 2012); *see also Sallas v. Digit. Fed. Credit Union*, 349 F. Supp. 3d 81, 93 (D. Mass 2018) ("[T]he discovery rule generally will not be resolvable on a motion to dismiss, unless it is plain from the complaint itself that the plaintiffs' claims are time-barred." (quoting *In re Tyco Intern., Ltd.*, 2004 WL 2348315, at *18 (D.N.H. Oct. 14, 2004))). Whether Plaintiff *should* have known about Defendant's first use of its mark in the United States is a factual question inappropriate for resolution at this early stage.

The Court now turns to Defendant's Rule 9(b) argument. To plead fraudulent inducement, a plaintiff must plausibly allege (1) that the defendant made a false representation of material fact, (2) with knowledge of its falsity, (3) with the purpose of inducing the plaintiff to act thereon, and (4) that the plaintiff relied upon the representation to its detriment. *See Valley Eye Physicians & Surgeons P.C. v. Modernizing Med. Billing Servs., LLC*, 2025 WL 2022021, at *2 (D. Mass.

---

[6] Defendant points to *Abdallah v. Bain Cap. LLC*, 2013 WL 3491074, *2 (D. Mass. Jul. 9, 2013) for the proposition that, in cases without an established fiduciary relationship, Massachusetts will only toll the statute of limitations where Plaintiff alleges "some affirmative act done with the intent to deceive." Opp. at 13. But that quoted language focused on fraudulent concealment, an entirely separate justification for tolling the statute of limitations, not the discovery rule. Other courts, including the court in *Abdallah*, treat the discovery rule and fraudulent concealment as separate doctrines. *See Abdallah*, 2013 WL 3491074, *2–4; *see also Maggio v. Gerard Freezer & Ice Co.*, 824 F.2d 123, 130–31 (1st Cir. 1987) (performing separate analyses for the Massachusetts discovery rule and fraudulent concealment). This Court will do the same.

Jul. 18, 2025) (citing *Griffin v. Coghill*, 2018 WL 1122361, at \*7 (D. Mass. Mar. 1, 2018)).

Additionally, Rule 9(b) requires fraud claims "be alleged with particularity." *Rodi v. S. New Eng.*

*Sch. of L.*, 389 F.3d 5, 15 (1st Cir. 2004). Particularity is a heightened pleading standard requiring

the plaintiff to provide, with specificity, the "who, what, where, and when of the allegedly false or

fraudulent representation." *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir.

2004). In addition to mandating that a plaintiff allege particular facts, Rule 9(b) also requires

"identifying the basis for inferring scienter." *N. Am. Catholic Educ. Programming Found., Inc. v.*

*Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009). To do so, a plaintiff must "set[] forth specific facts that

make it reasonable to believe that defendant knew that a statement was materially false or

misleading." *Greenstone v. Cambex Corp.*, 975 F.2d 22, 25 (1st Cir. 1992) (Breyer, J.).

Defendant argues Plaintiff fails to plead a material misrepresentation "with Rule 9(b)

particularity." Opp. at 12. But Plaintiff identifies the "who" (Defendant), the "what" (statements

about the timing of Defendant's first use in the United States), the "where" (in two documents: a

July 26, 2017 letter from Defendant's counsel and the Coexistence Agreement itself), and the

"when" (July 2017, when Defendant sent the letter, and January 2018, when the Coexistence

Agreement was signed). FAC ¶¶ 70, 99; *see also* Dkt. 76-6 (2017 letter); Dkt. 76-9 (Coexistence

Agreement). The First Amended Complaint contrasts these statements with documents revealed

in discovery purporting to show that Defendant's first use in the United States occurred at a later

date than Defendant represented in the lead up to the Coexistence Agreement. FAC ¶ 75.

Defendants dispute this reading of the documents, arguing that, properly interpreted, the

documents "are consistent with [Defendant's] representations." Opp. at 12. However, at the

pleading stage, the Court is "obligated to view the facts of the complaint in the light most favorable

to the plaintiffs, and to resolve any ambiguities in their favor." *Ocasio-Hernandez v.*

8

*Fortuno-Burset*, 640 F.3d 1, 17 (1st Cir. 2011).  Turning to materiality, at the motion to dismiss stage, Plaintiff need only allege "the matter misrepresented was relevant and important in determining their choice of action."  *Ezell v. Lexington Ins. Co.*, 335 F. Supp. 3d 91, 99 (D. Mass. 2018).  Plaintiff attests that Defendant's alleged misrepresentation was so vital to its decision to enter into the Coexistence Agreement that, had it known Defendant's actual date of first use, it would not have signed the contract.  FAC ¶ 102.  Therefore, at this stage, Plaintiff has plausibly alleged a material misrepresentation with particularity.

Defendant makes two other arguments in favor of finding futility.  First, Defendant argues Plaintiff fails to adequately allege scienter.  Opp. at 13.  But scienter may be reasonably inferred.  *Lan Global, Inc. v. Alchemy Telco Solutions US, LLC*, 2023 WL 5978296, at *9 (D. Mass. Jul. 6, 2023).  Here, it is reasonable to assume Defendant, in negotiating an agreement related to its only U.S.-based trademark, knew or should have known that trademark's true date of first use in the United States.  *See Bezdek v. Vibram USA Inc.*, 2013 WL 639145, at *8–9 (D. Mass. Feb. 20, 2013) (finding scienter adequately alleged where the Court could reasonably infer it was "unlikely the company was ignorant" of the relevant facts).  Second, Defendant claims Plaintiff's reliance was not reasonable.  Opp. at 15.  However, Plaintiff alleges it "would not have entered into the Coexistence Agreement" but for Defendant's representations about first use in 2013.  FAC ¶ 102.  Whether that reliance was reasonable is a factual question "normally" reserved for "a jury."  *Armstrong v. White Winston Select Asset Funds, LLC*, 648 F. Supp. 3d 230, 249 (D. Mass. 2022) (quoting *Marram v. Kobrick Offshore Fund, Ltd.*, 442 Mass. 43, 59 (2004)).  At the motion to dismiss stage, Plaintiff has therefore plausibly alleged scienter and reasonable reliance.

Having plausibly alleged Defendant knowingly made a material misrepresentation which Plaintiff reasonably relied upon, Plaintiff's fraudulent inducement claim is therefore not futile.

## B.      Breach of Contract (Count VII)

Plaintiff alleges four breaches of the Coexistence Agreement by Defendants: (1) a breach of paragraph 2 by attempting to limit Plaintiff's use of its mark through infringement and breach of contract lawsuits, FAC ¶ 95; (2) a breach of paragraph 3 by failing to use its mark with the required font and layout, *id.* ¶ 96; (3) a breach of paragraph 6 by using its mark in connection with interactive game-based learning programs, *id.* ¶ 97; and (4) a breach of paragraph 8 by failing to notify and collaborate with Plaintiff regarding concerns about confusion in the market, *id.* ¶ 98; *see also id.* ¶ 150.  Reading the pleadings in the light most favorable to Plaintiff, the First Amended Complaint states a claim for breach of Paragraphs 2, 3, and 8 of the Coexistence Agreement. Plaintiff fails to state a claim for breach of Paragraph 6.

As a preliminary matter, the parties both imply that Massachusetts law governs this claim though they fail to explain why.  The Coexistence Agreement contains no choice of law provision. Dkt. 76-9.  The pleadings do not state where the Coexistence Agreement was signed or negotiated. The parties' briefs on the breach of contract claim do not cite to Massachusetts law—or any law for that matter.  Opp. at 22–24; Reply at 9–11.  Elsewhere in the briefs, the parties cite Massachusetts law governing fraudulent inducement.  Opp. at 12–19; Reply at 6–8.  No other substantive state law is cited.  So, while questions remain as to whether Massachusetts law governs the Coexistence Agreement, *see supra* note 5, the Court will apply Massachusetts contract law.

### 1.      Paragraph 2 of the Coexistence Agreement

Plaintiff alleges that Defendant breached paragraph 2 of the agreement by "asserting baseless claims of infringement and breach" against it.  FAC ¶ 150.  Paragraph 2 of the Coexistence Agreement states, in relevant part, that Defendant "agrees to refrain from taking any steps to

10

oppose, cancel, or otherwise restrict [Plaintiff] from using or registering" Plaintiff's mark.[7] Dkt. 76-9 at 2. Defendant argues that Plaintiff merely objects to its assertions of "legal and factual positions *in this litigation*." Opp. at 22 (emphasis added).

But Plaintiff alleges a wider swath of conduct prior to the instant litigation violates paragraph 2. This includes multiple letters sent by Defendant's counsel regarding Plaintiff's alleged misuse and infringement of Defendant's mark, which Plaintiff alleges were intended to restrict the use of its mark. FAC ¶¶ 89–92. Defendant ignores this other alleged conduct in its Opposition. Opp. at 22. Plaintiff alleges that all of Defendant's alleged conduct, from letters to litigation, constituted "steps to oppose, cancel, or otherwise restrict" Plaintiff's use of its mark. FAC ¶¶ 89–92; *see also* Dkt. 76-9 at 2.

The contract's language prohibiting "*any steps* to oppose, cancel, or otherwise restrict" is broad, Dkt 76-9 at 2 (emphasis added), and Massachusetts courts interpret contracts in accordance with their plain meaning. *See Freelander v. G. & K. Realty Corp.*, 357 Mass. 512, 516 (1970). It is therefore reasonable to conclude that a cease-and-desist campaign and a subsequent legal challenge constitute "steps to oppose, cancel, or otherwise restrict" Plaintiff's use of its mark.[8] *Lan Global, Inc. v. Alchemy Telco Sols. US, LLC*, 2023 WL 5978296, at *2 n.3 (D. Mass. July 6,

---

[7] Coexistence agreements like the one at issue here are common, and the parties may generally contract to limit their own rights to bring trademark claims against the other. *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 920 F.3d 704, 710 (11th Cir. 2019) (acknowledging that "sister courts of appeals have agreed with the general sentiment that a license agreement between two parties can limit a licensee's ability to bring a Lanham Act claim") (citing *Fin. Inv. Co. (Bermuda) v. Geberit AG*, 165 F.3d 526 (7th Cir. 1998)); *see also Russell Road Food and Beverage, LLC v. Spencer*, 829 F.3d 1152, 1156 (9th Cir. 2016) ("It is also beyond dispute that trademark co-existence agreements are enforceable."). The First Circuit has additionally noted that "the parties to a trademark controversy may contract between themselves for any legal purpose. The agreement is for a legal purpose and is valid and enforceable so long as no injury is caused to the public." *T & T Mfg. Co. v. A. T. Cross Co.*, 587 F.2d 533, 538 (1st Cir. 1978) (quoting *Peyrat v. L. N. Renault & Sons, Inc.*, 247 F.Supp. 1009, 1014 (S.D.N.Y.1965).

[8] In fact, Defendant's own opposition presents some evidence that it, too, views certain legal action as a violation of paragraph 2. In its opposition to Count VIII for trademark cancellation, Defendant emphasizes that Plaintiff is unable to maintain its cancellation claim precisely because doing so would violate paragraph 1—the mutually identical provision to paragraph 2. Opp. at 19–20.

2023) ("At the motion to dismiss stage, the Court draws all reasonable inferences in Plaintiff's favor."). Plaintiff's breach of contract claim is therefore not futile.

## 2.    Paragraph 3 of the Coexistence Agreement

Plaintiff alleges Defendant misused Defendant's mark by failing to utilize the font and layout required by paragraph 3 of the Coexistence Agreement. FAC ¶ 96. Plaintiff presents five examples where Defendant allegedly utilized "Cahoot" without "Learning" as required by paragraph 3. *Id.* ¶ 103. Defendant counters that four of the examples are from third-party websites and Plaintiff presents no evidence of *Defendant* misusing its mark. Opp. at 21. Defendant also argues that the fifth example of misuse comes from "an unexecuted agreement" with an Australian company and thus cannot constitute misuse "in the United States." *Id.*

Plaintiff's pleadings plausibly connect Defendant to the alleged misuse for the first four examples.[9] The First Amended Complaint suggests that Defendant *was* involved, at least in part, "by way of its customers' customers." FAC ¶ 103. Plaintiff alleges the third-party documents reflect the joint efforts of Defendant and its customers. *Id.* ¶ 50 (asserting that Defendant "partners" with organizations to develop online courses). It is therefore plausible Defendant had a hand in the creation of these materials. For example, Defendant's co-founder and executive director is quoted in one of the documents. Dkt. 76-16 at 3. Reading the First Amended Complaint in the light most favorable to Plaintiff, there is a factual dispute as to the extent of Defendant's involvement in the third-party statements. The evidence may later show that some or all of these third-party entities acted on their own to construct the websites, and Defendant did not aid in their creation. As pled, however, this claim is not futile.

---

[9] The fifth example related to the Australian company, Rio Tinto, fails for substantially the same reasons articulated in Section III.B.3, *infra*.

### 3.    Paragraph 6 of the Coexistence Agreement

Plaintiff alleges that Defendant violated paragraph 6 of the Coexistence Agreement by partnering with Rio Tinto, an Australian company, to develop a "mining game," which Plaintiff likens to a "game-based learning program." FAC ¶ 97.  Paragraph 6 of the Coexistence Agreement bars Defendant from registering or attempting to register its mark "in connection with interactive game-based learning programs."  Dkt. 76-9 at 3.  Plaintiff claims that *if* the mining game "is determined to be a use in the United States," it would violate paragraph 6.  FAC ¶ 97.

Plaintiff's argument is conditional upon factual allegations it does not present—and even disaffirms.  Firstly, Plaintiff explicitly pleads that "the business activities of [Defendant] with respect to Rio Tinto . . . do not occur in the United States."  FAC ¶ 68.  That alone presents a serious challenge to Plaintiff's claims, though Plaintiff cautions that such allegations are "[pled] in the alternative."  Reply at 10.

Plaintiff's other argument, however, is equally unavailing.  The First Amended Complaint predicates the factual basis of its Rio Tinto claims on what it *expects* Defendant to say in response to a wholly separate claim.  FAC ¶ 80 ("To the extent that [Defendant] argues that the Rio Tinto 'mining game' is used in commerce in the United States, it is then a violation of the Coexistence Agreement."); *see also* Reply at 10 ("[Defendant] does not concede that its actions by way of Rio Tinto do not occur in the United States.").[10]  But this framing flips the burden, which Plaintiff bears, on its head.  *Hochendonor v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016) (noting that at the pleading stage, "plaintiff bears the burden of plausibly alleging a viable cause of action").  Nowhere in the First Amended Complaint does Plaintiff make an affirmative allegation that the

---

[10] And, in fact, in its opposition, Defendant does not address the claim as Plaintiff predicted—instead, it argues the opposite.  Opp. at 22 ("[T]his alleged misuse did not occur in the United States.").

Rio Tinto game was used in the United States or provide a reasonable basis for the Court to reasonably make such an inference. *See Rodriguez-Vives v. P.R. Firefighters Corps of P.R.*, 743 F.3d 278, 286 (1st Cir. 2014) ("[T]he bareness of the factual allegations makes clear that the plaintiff is merely speculating about the fact alleged and therefore has not shown that it is plausible that the allegation is true."). Based on Plaintiff's own pleadings, this claim is therefore futile.

### 4.    Paragraph 8 of the Coexistence Agreement

Finally, Plaintiff alleges Defendant breached paragraph 8 of the Coexistence Agreement by failing to "provide timely notice of any alleged confusion or concerns" regarding Plaintiff's mark. FAC ¶ 98. Furthermore, Plaintiff claims Defendant failed to "cooperate and work together" to minimize confusion. *Id.* ¶ 150. Paragraph 8 requires the parties to "take all reasonable measures and precautions to avoid any possible confusion in the marketplace" and to "notify each other of any concerns and cooperate and work together with each other to promptly find ways to eliminate or minimize any confusion." Dkt. 76-9 at 3. Defendant counters that it did reach out to Plaintiff regarding confusion, as described by Plaintiff in the First Amended Complaint. Opp. at 22–23 (citing FAC ¶¶ 89–92).[11]

Drawing all reasonable inferences in Plaintiff's favor, it is plausible that Defendant's first outreach regarding confusion in September 2023 was not sufficiently "prompt" as required by paragraph 8. Dkt 76-9 at 3. Defendant's first letter raised concerns about potential confusion related to Plaintiff's Kahoot! 360 products, Dkt. 75-20 at 3, but Plaintiff launched the Kahoot! 360 product line over two years prior, in May 2021, FAC ¶ 43. On this claim, Plaintiff plausibly alleges breach and therefore the claim is not futile.

---

[11] Additionally, Defendant does not address Plaintiff's claim that Defendant did not "cooperate and work together" to minimize confusion. *Id.* ¶ 150.

### C.    Trademark Cancellation (Count VIII)

Plaintiff also requests cancellation of Defendant's trademark under section 14 of the Lanham Act, 15 U.S.C. § 1064. FAC ¶¶ 152–57. Plaintiff alleges Defendant's "minimal, sporadic, and insufficient" use of the mark does not constitute "bona fide" use under the Lanham Act and thus warrants cancellation for abandonment. *Id.* ¶ 107. (citing 15 U.S.C. § 1127). Section 37 of the Lanham Act "empowers the federal courts to 'determine the right to registration [and] order the cancellation of registrations' in civil cases in which a registered mark is at issue." *PHC, Inc. v. Pioneer Healthcare, Inc.*, 75 F.3d 75, 79 (1st Cir. 1996) (quoting 15 U.S.C. § 1119).

In arguing for futility, Defendant first asserts that Plaintiff waived the right to bring this very claim in the Coexistence Agreement. Opp. at 15–16. The Coexistence Agreement states that Plaintiff "agrees to refrain from taking any steps to oppose, cancel, or otherwise restrict [Defendant] from using or registering" its mark. Dkt. 76-9 at 2. Defendant made the same commitment to Plaintiff. *Id.* However, "[i]t is black-letter law that an agreement . . . is voidable by a party who is fraudulently induced to enter into it." *Pittman v. Zoar Outdoor Adventure Resort, Inc.*, 2017 WL 2962891, at *4 (D. Mass. June 9, 2017) (quoting *Green v. Harvard Vanguard Med. Assocs., Inc.*, 79 Mass. App. Ct. 1, 11 (2011)). Plaintiff plausibly pled fraudulent inducement, *see supra* Section III.A, and therefore the Coexistence Agreement's waiver provision is allegedly non-operable.

In the event the waiver provision is non-operable, Defendant makes a second argument: the documents produced through discovery thus far indicate Defendant continued to use its mark in the United States, refuting Plaintiff's allegations of non-use since 2023. Opp. at 20. However, "whether a trademark holder has abandoned its use of a mark is a question of fact." *Dubliner, Inc. v. E. Coast Tavern Grp, Inc.*, 706 F. Supp. 3d 181, 192 (D. Mass. 2023) (quoting *In re JobDiva, Inc.*, 843 F.3d 936, 940 (Fed. Cir. 2016)). Taking Plaintiff's allegations as true, and resolving all

15

reasonable inferences in Plaintiff's favor, there exists a factual dispute over Defendant's post-2023 use, or non-use, of its mark.  It would be premature to resolve that factual dispute at the pleading stage.  Plaintiff's claim for trademark cancellation is therefore not futile.

### D.       False Designation of Origin Claim (Count IX)

Plaintiff additionally alleges Defendant violated the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) ("Section 1125(a)(1)(A)"), by engaging in unauthorized use of its mark, FAC ¶¶ 158–63.  Plaintiff principally relies on alleged breaches of the Coexistence Agreement as the basis for its Section 1125(a)(1)(A) claim: the use of "Cahoot" without "Learning" in third-party documents and the "mining game," developed for Rio Tinto.  *Id.* ¶ 8.  By using the "Cahoot" name without "Learning," Plaintiff alleges Defendant co-opted Plaintiff's "reputation and brand strength."  *Id.*  These actions, Plaintiff asserts, led to consumer confusion and caused it irreparable harm.  *Id.* ¶¶ 160, 162.

Claims brought under Section 1125(a)(1)(A) are generally referred to as "false association" claims.  *Lexmark Int'l., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014).  To state a claim under Section 1125(a)(1)(A), the plaintiff must plausibly allege facts that, if proven, show "(1) defendant used a designation (any word, term, name, device, or any combination thereof) or false designation of origin; (2) the use was in interstate commerce; (3) the use was in connection with goods or services; (4) the designation or false designation is likely to cause confusion, mistake[,] or deception as to (a) the affiliation, connection, or association of defendant with another person, or (b) as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by another person; and (5) plaintiff has been or is likely to be damaged by these acts."  *Bos. Sports Med., Inc. v. Bos. Sports Med. & Rsch. Inst., LLC*, 2022 WL 2915670, at *4 (D. Mass. July 25, 2022) (alteration in original) (quoting *Brown v. Armstrong*, 957 F. Supp. 1293, 1300 (D. Mass. 1997), *aff'd*, 129 F.3d 1252 (1st Cir. 1997)).  "Claims under this subsection

typically involve 'attempts to appropriate the goodwill associated with a competitor' for example, by misappropriating a trademark." *Am. Bd. of Internal Med. v. Salas Rushford*, 114 F.4th 42, 64 (1st Cir. 2024) (quoting *Flynn v. AK Peters, Ltd.*, 377 F.3d 13, 19 (1st Cir. 2004)).

Under the Lanham Act, "registration of a mark is prima facie evidence of 'the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration.'" *Black Dog Tavern Co., Inc. v. Hall*, 823 F. Supp. 48, 53 (D. Mass. 1993) (quoting 15 U.S.C. § 1115(a)). According to the First Amended Complaint, both Plaintiff and Defendant registered their trademarks about a decade ago. FAC ¶¶ 25, 51. The parties do not dispute that the "Cahoot" mark— without "Learning" was used in interstate commerce and in connection with goods and services. While Defendant maintains it played no role in the third-party uses of its mark, the Court has already explained that the First Amended Complaint plausibly alleges Defendant's involvement. *See supra* Section III.B.2. The first three prongs are therefore met.

The fourth prong, consumer confusion, is "a far more fact-specific inquiry." *Hearts on Fire Comp., LLC v. Blue Nile, Inc.*, 603 F. Supp. 2d 274, 283 (D. Mass. 2009). The First Circuit has developed an eight-factor test to determine likelihood of confusion: "(1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of the plaintiff's mark." *Oriental Fin. Grp., Inc. v. Cooperativa de Ahorro y Crédito Oriental*, 698 F.3d 9, 17 (1st Cir. 2012) (quoting *Beacon Mut. Ins. Co. v. OneBeacon Ins. Grp.*, 376 F.3d 8, 15 (1st Cir. 2004)). Additionally, likelihood of consumer confusion must be "more than the theoretical *possibility* of confusion." *Bos. Duck Tours, LP v. Super Duck Tours, LLC*, 531

F.3d 1, 12 (1st Cir. 2008) (emphasis added) (quoting *Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr.*, 103 F.3d 196, 200 (1st Cir. 1996). "While a number of these factors require factual development in discovery for adequate evaluation, some provide a reasonable measure for assessing the adequacy of the allegations for purposes of ruling on a motion for leave to amend a complaint." *Channing Bete Co., Inc. v. Greenberg*, 2022 WL 43692, at *10 (D. Mass. Jan. 5, 2022).

Plaintiff's pleadings, however, repeatedly *disaffirm* any evidence of possible consumer confusion. *See e.g.*, FAC ¶ 3 ("[A]fter entering into a Coexistence Agreement, [Plaintiff] and [Defendant] peacefully coexisted for over seven years without any known instances of actual confusion, which ***indicates that consumer confusion is unlikely,*** especially based on the well-established [Plaintiff] brand versus the relatively unknown [Defendant] brand in the United States.") (emphasis added); *see also id.* ¶ 86 ("Since executing the Coexistence Agreement, [Plaintiff] has ***not become aware of any confusion*** between [Plaintiff] and [Defendant]." (emphasis added); *id.* ¶ 91 ("[Defendant] had ***failed to offer any instance of actual confusion*** between the [Plaintiff] platform and [Defendant]'s services." (emphasis added)). The one and only time Plaintiff does claim a likelihood of consumer confusion due to Defendant's alleged misuse, it does so in a conclusory manner without any evidence. *Id.* ¶ 160 ("[Defendant]'s unauthorized use of its [mark] is likely to cause consumers to be confused as to the source, nature, and quality of the products and services [Defendant] is promoting or selling."); *see also Sloan's Clematis, Inc. v. Fork & Knife, LLC*, 2025 WL 3052632, at *2 (D. Mass. Aug. 4, 2025) (dismissing false designation of origin claim where plaintiff did not "allege[] any instances of actual confusion" and failed to explain the similarities in the company's "channels of trade, advertising, or consumer base").

Even if the Court ignored Plaintiff's repeated insistence that there is no confusion, the First Amended Complaint is rife with allegations disclaiming some of the First Circuit's eight factors. With respect to the parties' advertising and classes of prospective purchasers (factors four and five), the First Amended Complaint alleges that Plaintiff and Defendant exist in separate spheres of commerce. FAC ¶ 3 ("[T]he parties' respective [marks] are used in connection with different goods and services, offered to different target markets, and marketed and sold through different channels of trade."). Unlike Defendant, Plaintiff claims it "does not offer educational consulting or advisory services for others, such as developing classes, seminars, or workshops." *Id.* ¶ 49. Additionally, Defendant "advertises on its own website, but does not sell a product. . . . [Defendant] sells its services to business through direct sales representatives." *Id.* ¶¶ 62–64. Unlike Plaintiff, Defendant "does not have an 'off-the-shelf' product or application available from an online app store." *Id.* ¶ 66. These factual allegations demonstrate that the parties' advertising methods and consumer base are sufficiently differentiated so as not to cause a likelihood of confusion. *See e.g.*, *Nucleus Rsch. v. Manhattan Assocs.*, 2021 WL 9096698, at *1 (D. Mass. May 14, 2021) (dismissing Lanham Act claim because the parties were "different businesses with different channels of trade" and their customers were "highly sophisticated businesses who are not likely to be misled").

All told, Plaintiff fails to demonstrate a likelihood of confusion, and indeed frequently pleads facts showing the opposite. The false association claim under Section 1125(a)(1)(A) is therefore futile.

### E.    Chapter 93A Claim (Count X)

Plaintiff alleges that Defendant also violated Mass. Gen. Laws ch. 93A, § 11 ("Chapter 93A") in through the "acts described" in the First Amended Complaint. The Court identifies two categories of alleged unfair and deceptive trade practices: (1) engaging in fraudulent inducement

19

and (2) misusing its mark.  FAC ¶¶ 164–71.  Defendant argues that the Chapter 93A claim is futile because the none of the alleged conduct occurred primarily and substantially in Massachusetts. Opp. at 24; *see also* Mass. Gen. Laws ch 93A, § 11 ("No action shall be brought or maintained under this section unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth.").

The Court begins its 93A analysis with Plaintiff's claims of fraudulent inducement.  State law claims based in allegations of fraud are also subject to the heightened pleading requirements of Rule 9(b).  *See Martin v. Mead Johnson Nutrition Co.*, 2010 WL 3928707, at *3 (D. Mass. Sept. 30, 2020) ("A claim under Chapter 93A that involves fraud is subject to the heightened pleading requirement." (citing *Crisp Human Cap. Ltd. v. Authoria Inc.*, 613 F. Supp. 2d 136, 139 (D. Mass. 2009))).  As discussed earlier, Plaintiff's fraudulent inducement claim plausibly meets the particularity standard of Rule 9(b).  *See infra* Section III.A.  However, Plaintiff fails to allege any facts sufficient to indicate the alleged fraudulent inducement took place in Massachusetts.  *See Kenda Corp., Inc. v. Pot O'Gold Money Leagues, Inc.*, 329 F.3d 216, 235 (1st Cir. 2003) (explaining that where misrepresentations in contract negotiations are alleged under Chapter 93A, a court must pay special attention to where the contract was negotiated and signed); *see also Integrated Comms. & Techs., Inc. v. Hewlett-Packard Fin. Servs. Co.*, 573 F. Supp. 3d 513, 547 (D. Mass. 2021) (same).  Indeed, Massachusetts is not mentioned at all in the First Amended Complaint in relation to Plaintiff's fraudulent inducement claim.  FAC ¶¶ 99–102, 142–147. Absent any alleged conduct in Massachusetts related to the fraudulent inducement, Plaintiff's Chapter 93A claim cannot stand.

Beyond fraud, Plaintiff claims additional misconduct is subject to Chapter 93A—namely, that Defendant allegedly misused its mark.[12]  FAC ¶¶ 103–06.  To properly plead a viable Chapter 93A claim, the complaint must show that the alleged unfair competition or deceptive act "occurred primarily and substantially" within Massachusetts.  *Jofran Sales, Inc. v. Watkins and Shepard Trucking, Inc.*, 216 F. Supp. 3d 206, 215 (D. Mass 2016).  Put another way, the Court must determine if the "center of gravity" of the conduct occurred within Massachusetts.  *Kuwaiti Danish Comput. Co. v. Digit. Equip. Corp.*, 438 Mass. 459, 473 (2003).  While this determination is "fact-intensive," *Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 2014 WL 304070, at *5 (D. Mass. Jan. 28, 2014), it is nevertheless "a question of law," *In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156, 194 (1st Cir. 2009).[13]  To survive a motion to dismiss under section 11 of Chapter 93A, the complaint need only allege "that the plaintiff is located, and claims an injury, in Massachusetts."  *Back Bay Farm, LLC. v. Collucio*, 230 F. Supp. 2d 176, 188 (D. Mass. 2002) (citing *Amcel Corp. v. Intern. Executive Sales, Inc.*, 170 F.3d 32, 36 (1st Cir. 1999)).

Plaintiff also notes that the Court "already found" Defendant has "substantial" Massachusetts connections.  Reply at 11 (citing Dkt. 37 at 2, 8–9).  This argument conflates personal jurisdiction requirements with Chapter 93A pleading requirements.  *See Back Bay Farm, LLC.*, 230 F. Supp. 2d at 188 ("[T]he personal jurisdiction inquiry is separate and distinct from the

---

[12] This conduct is not subject to heightened pleading requirements, because it does not involve alleged fraud. *Declude, Inc. v. Perry*, 593 F. Supp. 2d 290, 296 (D. Mass. 2008) ("[I]t should be noted that Chapter 93A, to the extent it does not involve fraud, is not subject to a heightened pleading requirement.").

[13] Despite the fact intensive nature of the analysis, Courts regularly dismiss Chapter 93A claims for failing to allege a center of gravity in Massachusetts. *See, e.g.*, *Crunchtime! Info. Sys., Inc. v. Frischs Rest., Inc.*, 768 F. Supp. 3d 183, 186 (D. Mass. 2025) (dismissing Chapter 93A claim for failing to allege that the "claim arose from activities 'primarily and substantially' in Massachusetts"); *Parexel Int'l LLC v. PrisymID Ltd.*, 2024 WL 3471930, at *7 (D. Mass. July 19, 2024) (same); *Warren Env't, Inc. v. Source One Env't, Ltd.*, 2020 WL 1974256, at *11 (D. Mass. Apr. 24, 2020) (same); *Evergreen*, 2014 WL 304070, at *5 (same); *Acacia Commc'ns, Inc. v. ViaSat, Inc.*, 2018 WL 2050125, at *7 (Mass. Super. Ct. Mar. 22, 2018) (same).

question of whether the allegedly deceptive acts occurred primarily and substantially within the commonwealth." (internal quotations omitted)).  In its September 30, 2025 order, the Court held it could exercise specific personal jurisdiction over Defendant for the five original counts.  Dkt. 37 at 7–9.  The Court determined that Defendant's "business contacts" in Massachusetts were sufficient evidence Defendant had engaged in the requisite "purposeful availment" necessary to exercise jurisdiction.  *Id.* at 8–9.  But the bar to plead a Chapter 93A claim is higher, and Plaintiff fails to meet it.

The First Amended Complaint does not establish that Plaintiff is either located, or suffered an injury, in Massachusetts or that Defendant is either located, or caused an injury, in Massachusetts.  Plaintiff, a Norway-based corporation, makes no allegation that it is *located* in Massachusetts, only that it has "sold goods and services in this judicial district."  FAC ¶ 20.  The First Amended Complaint does allege Plaintiff suffered an injury.  FAC ¶ 169.  In doing so, however, it merely describes "various conduct that occurred between plaintiff and defendant without reference to place."  *CrunchTime! Info. Sys., Inc. v. Frischs Restaurants, Inc.*, 768 F. Supp. 3d 183, 186 (D. Mass. 2025) (dismissing a Chapter 93A claim because "nothing in the complaint itself state[d] where the injuries occurred, whether at plaintiff's Massachusetts headquarters or elsewhere.").  Where the First Amended Complaint does mention Massachusetts, it does so by referencing Defendant's commercial relationship with MIT.  FAC ¶ 57.  But Plaintiff fails to connect those commercial relationships with any alleged unfair and deceptive acts.  Plaintiff does not assert, for example, that Defendant misused its mark with respect to its work for MIT, or that the mark was misused primarily with Massachusetts-based clients.  *See Neural Magic, Inc. v. Meta Platforms, Inc.*, 659 F. Supp. 3d 138, 182 (D. Mass. 2023) ("Only the defendant's unfair and deceptive acts are relevant; other contacts with Massachusetts 'do not play a part in this

22

assessment.'" (quoting *Armstrong v. White Winston Select Asset Funds*, *LLC*, 2022 WL 17981392, at *24 (D. Mass. Dec. 27, 2022)).

Furthermore, to the extent Plaintiff does allege harm to its "goodwill" and "business reputation," it does so with reference to Defendant's alleged trademark misuse generally "in the United States," not specifically in Massachusetts.[14]  FAC ¶¶ 103, 169.  Where Defendant's alleged misconduct is "nationwide," courts do not find the "primarily" prong of the Chapter 93A analysis satisfied.  *See, e.g.*, *Iron Workers Dist. Council of New Eng. Health and Welfare Fund v. Teva Pharma. Inds. Ltd.*, 734 F. Supp. 3d 145, 162 (D. Mass. 2024) (quoting *Fishman Transducers, Inc. v. Paul*, 684 F.3d 187, 197 (1st Cir. 2012)).  Plaintiff also claims that Defendant engages with customers and partners in Massachusetts as well as "Pennsylvania, Colorado, and Washington DC."  FAC ¶ 18.  But if "the significant contacts of the competing jurisdictions are approximately in the balance, the conduct in question cannot be said to have occurred primarily and substantially in Massachusetts."  *Neural Magic*, 659 F. Supp. 3d at 182–83 (quoting *Uncle Henry's, Inc. v. Plaut Consulting Co.*, 399 F.3d 33, 45 (1st Cir. 2005)).

All told, Plaintiff's allegations are insufficient to demonstrate that the claim arose "primarily and substantially" within Massachusetts.  Having failed to meet the pleading requirements for 93A, this claim is futile.

---

[14] Other sections of Plaintiff's complaint also raise serious doubts about the centrality of Massachusetts to its Chapter 93A claim.  In asserting its non-use claims, Plaintiff alleges that Defendant's use of its mark in the United States as a whole—let alone, Massachusetts—has been "minimal" and "sporadic."  FAC ¶ 108.  It further alleges that Defendant's "*primary* operations, clients, and revenue are located outside of the United States."  FAC ¶ 155 (emphasis added).  Essentially, Plaintiff asks the Court to believe two contradictory realities.  First, Defendant barely used its mark in the United States—enough to constitute non-use, and secondly, Defendant *misused* its mark "primarily and substantially" within Massachusetts at a level sufficient to cause Plaintiff irreparable harm.

**IV.    <u>Conclusion</u>**

For the foregoing reasons, Defendant's motion for leave to amend is GRANTED in part and DENIED in part.  Plaintiff is granted leave to amend with respect to Count VI, VII, and VIII consistent with this opinion.  Plaintiff is denied leave to amend with respect to Counts IX and X.

**So Ordered.**

/s/ Brian E. Murphy

Brian E. Murphy

Judge, United States District Court

Dated: May 28, 2026